# United States District Court
# District of Massachusetts

2013 FEB -8  A 11: 04

## James Dore
## Plaintiff

### v.   13-cv- 10315 -

## Defendants
## New Sensations Incorporated,
## Copyright Enforcement Group LLC,
## Marvin Cable

### I. Introduction

1. This is a civil action seeking monetary, and injunctive relief against New Sensations Inc., The Copyright Enforcement Group LLC, and Attorney Marvin Cable for their participation in an illegal copyright trolling business/extortion scheme against the plaintiff and other similarly stipulated victims.

### II. Parties

2. Plaintiff is named James Dore, is over the age of 18, and is located at 97 Cedar St. Apt. 2, Haverhill MA, 01830.

3. Plaintiff is informed and believes that New Sensations Inc. (Hereafter NSI) is a company located in located at 21345 Lassen St., Chatsworth, CA 91311

4. Plaintiff is informed and believes that the Copyright Enforcement Group (hereafter the CEG) is LLC a company that is located at 8484 Wilshire Boulevard suite 220, Beverly Hills, California 90211

5. Plaintiff is informed and believes that Attorney Marvin N. Cable is located at Law Offices of Marvin Cable, PO Box 1630, Northampton, MA 01061.

### III. Jurisdiction

6. This court has personal and subject matter jurisdiction over this matter as this action arises out of Federal Racketeering laws 18 U.S.C. 96 § 1961 et. Seq.

7. This Court has personal jurisdiction over this matter as it involves defendants who are not residents of the same state as the plaintiff.

### IV. Venue

8. Venue is proper in the District of Massachusetts as this it where all three defendants have carried out their conspired actions against the plaintiff. Their action took the form of lawsuit 1:12-cv-10944 where NSI acted as the "plaintiff", the CEG provided "evidence" and "expert testimony", and Marvin Cable acted as the "attorney" to harass and harm the plaintiff in an attempt to unjustly extort money from him.

9. Venue is also proper since the only plausible counter claim that can arise will be one for "copyright infringement" of which, according to NSI, occurred in this state.

### V. Joinder

10.    Joinder of all three parties into one lawsuit is appropriate pursuant to Rule 20 as this action is brought against them for their direct involvement in the same action or

occurance against the plaintiff.

## VI. Background

### A. Litigation History

11.     New Sensations first filed lawsuits against Doe defendants, using CEG's advertised "monetization" and settlement services, December 23, 2010.  There were two cases filed, they were cases 3:10-cv-05863 and 5:10-cv-05864.

12.     Case 3:10-cv-05863 allowed the mass joinder, during which New Sensations attained 82 settlements out of 1745 defendants before they voluntarily dismissed all remaining defendants. They are yet to refile against any Doe defendants.

13.     Case 5:10-cv-05864 did not allow the mass joinder. After that, New Sensations' CEG attorney dismissed the case voluntarily without stating any grounds therefore.

14.     May 31, 2011, Case 4:11-cv-02835, changed into case 5:10-cv-05864 when all but one defendant was severed from the case, was filed. The case was officially dismissed for failure to prosecute because New Sensations failed to serve the remaining defendant within a generous amount of time.

15.     No lawsuits against those Doe defendants dismissed without prejudice have been filed against them after the dismissal.

16.     In all of New Sensations current cases, not a single Doe Defendant has been served with a complaint and summons (Exhibits A: All New Sensations copyright infringement lawsuit Docket sheets).

17.    All cases are assisted by the CEG, this is an obvious fact that can be noted by the CEG's signature "declaration of Jon Nicolini" found in all cases (Exhibits A).

18.    No copyright infringement lawsuit filed by NSI have proceeded beyond service of complaint and summons. There is only one complaint that was known to have been served by Marvin Cable, that ended in default. To the best of the plaintiff's knowledge, not a single NSI copyright trolling lawsuit nor a copyright trolling lawsuit represented by Marvin Cable has proceeded to discovery or trial.

19.    September 4th, New Sensations' copyright infringement case 8:12-cv-01291 had an order to show cause issued as to why they had not served the only remaining defendant in that case, defendant was dismissed voluntarily and without prejudice soon after that order was issued (Exhibits B).

20.    CEG attorneys typically argue the complaints are often not served because most defendants opt to settle while refusing to disclose to the courts that acquiring the advertised settlements is the sole purpose and goal of the filed lawsuits. They omit this fact because disclosure of that fact would warrant sanctions and dismissal for bad-faith litigation.

### B. Underlying Action

21.    On May 26, 2012, defendant NSI filed a false lawsuit against the above named plaintiff and many other "Doe" defendants, with the help of defendants CEG and Marvin Cable.

22.   The purpose of this lawsuit was to deceive unsuspecting does into believing that they violated defendant NSI's rights and to essentially threaten them with public humiliation.

23.   The goal of this was to induce fear, emotional damages, and humiliation in order to extort "settlements" out of their victims. This was mostly carried out by defendant Marvin Cable.

24.   NSI's complaint was constructed in a vague and deceptive manner, specifically omitting any facts related to the torrent file in question and their personal knowledge of having used a service they knew would enable or otherwise allow the defendants to have access to their work. NSI also omitted the fact that they did nothing to prevent the defendants from accessing and copying the work in question and that they intended to use their work to sue people before any copying of said work occurred or was known to them.

25.   The complaint was drafted and submitted by attorney Marvin Cable and was identical to nearly all but 2 of the 40 other complaints filed by himself, save for the plaintiffs' names and the works in question.

26.   The above named plaintiff was dismissed from that action after accumulating approximately $1,000 in costs.

27.   Although the above stated matter was resolved in favor of the undersigned due to technical reasons, the plaintiff was never liable to NSI to begin with.

## C. Underlying Facts

28.     Due to NSI's personal knowledge of how the CEG's
monitization service functions and their personal and recorded
knowledge that people may copy their work, all people sued as a
result of the CEG's service have not committed copyright
infringement. NSI's complaint is and was without any legal
grounds, because NSI knew that people may be copying their work
and chose to take no action to prevent the copying of the
torrent file identified by Hash #
022aab5cffdc7d012751cbb0f0c62f2dbec29a83.

29.     A copyright holder giving away copies of their work does
not denote copyright infringement by the copier.

30.     A copyright holder allowing people to copy their work does
not denote copyright infringement by the copier.

31.     A copyright holder choosing not to prevent the copying of
their works does not denote copyright infringement by the
copier.

32.     A copyright holder, having personal knowledge of people
copying their work, secretly allowing people to copy their work
does not denote copyright infringement by the copier.

33.     A copyright holder, having personal knowledge of people
copying their work, secretly choosing not to prevent the copying
of their work does not denote copyright infringement by the
copier.

34.     A copyright holder, having personal knowledge that their

work may be being copied, secretly choosing to turn a blind eye
to people copying their work while hiring someone else to
monitor and record any copying of said work does not denote
copyright infringement by the copier. This is, in brief, the
CEG's method.

35.    Because copyright law is consent dependent and because
setting traps or monitoring works for activity require even a
slight degree of personal knowledge of the copying by the
copyright holder, the copyright holder has no lawful claim to
copyright infringement when they use their works to set traps or
monitor, without preventing, the copying of their works.

36.    The initial discovery of a work being copied or
distributed, without a copyright holders consent, does denote
copyright infringement. However, it is what the copyright holder
decides to do after said discovery that determines if the
initial act and any subsequent acts are copyright infringement
and is still copyright infringement. Willful blindness to this
fact does not excuse the "blizzard" of copyright infringement
lawsuits that have descended upon the courts.

37.    A copyright holder knowing that a work produced may be
copied and uses a third-party monitoring system to remain
willfully blind to any copying or distribution of their work
while still having such copying tracked does not have any legal
right to sue for copyright infringement because they chose to be
willfully blind to such actions, before any recorded copying

took place, rather than taking preemptive preventative actions.

38.     Willful blindness (sometimes called ignorance of law, willful ignorance or contrived ignorance or Nelsonian knowledge) is a term used in law to when an individual seeks to avoid civil or criminal liability for a wrongful act by intentionally putting himself in a position where he will be unaware of facts that would render him liable. The CEG's monetization service is designed to provide a copyright holder with just that: a way to avoid civil or criminal liability for a wrongful act by intentionally putting them-self in a position where they will be unaware of facts that would render him liable. The CEG does this in an attempt to create the technical circumstances required to have a legitimate copyright infringement claim without the need of a legitimate copyright infringement claim.

39.     Additionally, as with all copyright trolling lawsuits, NSI interest in being willfully ignorant to the copying is obvious: if NSI were doing the monitoring personally they would be personally liable for all copying and thus could not successfully establish prima facie infringement to trick the court with. Because they chose to be willfully blind to the fact of any copying, a fact that is unarguable since they factually hired the CEG, they never had the right to sue for copyright infringement in the first place.

## VII. Actionable Causes of Harm

### A. NSI

#### 1. Libel/Defamation of Character

40.     On May 26, 2012, NSI filed a lawsuit against the plaintiff
that falsely alleged that the plaintiff violated NSI's
copyrights.

41.     NSI claimed that the plaintiff violated their rights by
downloading a copy of their pornographic work via bittorrent
without their consent. Plaintiff believes and alleges that NSI
knew these same claims were false because NSI willfully
knowingly used their purportedly copyrighted work to entrap
victims for the purpose of filing false claims to scare their
victims into paying settlements.

42.     Plaintiff is informed that because NSI had personal
knowledge of the transaction or copying and took no action to
prevent said copying at the time of the copying, NSI allowed the
transaction to take place and, as a matter of law, had no legal
right to sue or make allegations of rights violations or illegal
activity against the plaintiff or similarly stipulated victims.

43.     Plaintiff is informed, believes, and alleges that NSI
asserted or allowed the assertion of such false claims in their
name for the purpose of personally obtaining undue profits by
way of defrauding, scaring, and humiliating its victims, such as
the plaintiff.

## 2. Abuse of Process/Malicious Prosecution

44.     On May 26, 2012, NSI filed a lawsuit asserting false allegations against the plaintiff for the purpose of deceiving the plaintiff into paying a settlement of $3,500.

45.     Plaintiff is informed, believes, and alleges that NSI's purpose for filing a lawsuit was solely to give their threat "teeth".

46.     Plaintiff is informed, believes, and alleges that NSI filed the lawsuit to deliberately create the illusion that they had a legal right to sue for the purpose of deceiving the plaintiff and its other victims.

47.     Plaintiff is informed, believes, and alleges that NSI filed the lawsuit to deliberately induce fear, stress, emotional duress, and psychological duress to more easily procure settlements from the plaintiff and its other victims.

48.     Plaintiff is informed, believes, and alleges that NSI improperly used the courts, and the legal system in general, as a sort of weapon to abuse and harass the plaintiff and similarly stipulated victims.

49.     Plaintiff is informed, believes, and alleges that NSI had no intention of following through with their lawsuit for reasons such as avoiding discovery because NSI knew that their claims were false and without merit.

50.     Plaintiff is informed, believes, and alleges that NSI had no intention of following through with their lawsuit for reasons

such as avoiding discovery to avoid exposure for partaking in a "what is essentially an extortion scheme".

### 3. Attempted Extortion

51.    Plaintiff is informed, believes, and alleges that NSI conspired to and followed through with, knowingly filing a frivolous lawsuit, with no intention of pursuing litigation, for the purpose of extracting unjust and undue settlements from the plaintiff and similarly stipulated victims.

52.    Plaintiff believes and alleges that NSI took the initial steps of their extortion scheme by creating and filing a frivolous lawsuit and deceptively requesting discovery, but were blocked by plaintiff's actions of filing a motion to quash/dismiss and by filing a counter claim.

53.    Plaintiff is informed, believes, and alleges that NSI has profited from extorting money from Doe defendants and intended to and attempted to do the same to the plaintiff.

54.    Plaintiff is informed, believes, and alleges that NSI used the embarrassing nature of pornography and its victims potential sexual interests to humiliate its victims into settlements by using the threat of public exposure and scrutiny via a public lawsuit. Plaintiff is informed, believes and alleges that NSI used the threat of a potentially costly lawsuit to scare the plaintiff and its other victims into paying "settlements"

55.    Plaintiff is informed, believes, and alleges that all NSI willfully and knowingly acted in ways or partook in actions that

were intended to cause emotional duress and humiliation, with reckless disregard to the plaintiff and their other victims, for the purpose of coercing them to pay money to avoid public exposure.

### 4. Racketeering

56.    Plaintiff is informed and believes that under current racketeering laws the filing of fraudulent and malicious lawsuits in order to scare people into paying "settlements" is an act of racketeering.

57.    Plaintiff is informed and believes that racketeering is illegal under 18 USC § 1961 et. Seq.

58.    Plaintiff is informed, believes, and alleges that NSI willfully and knowingly, under the guidance of capable legal council, filed a fraudulent lawsuit with malicious intent to scare people, such as the plaintiff, into paying them money to avoid being sued.

59.    Plaintiff is informed, believes and alleges that The CEG's monetization service is designed to provide a copyright holder with a means to avoid civil or criminal liability for a wrongful act by intentionally putting them-self in a position where they will be unaware of facts that would render him liable. Plaintiff is informed, believes, and alleges that the CEG does this in an attempt to create the technical circumstances required to have a legitimate copyright infringement claim without the need of a legitimate copyright infringement claim so they can create

fraudulent lawsuits that their partnered attorneys use to attempt to extort money from their victims, such as the plaintiff.

60.     Plaintiff believes he suffered no property damage or fiscal damages as a result of their racketeering, however plaintiff has suffered costs of litigating against NSI's lawsuit which has resulted in fiscal losses. Plaintiff wishes for the court to clarify if litigation expenses resulting from fighting a racketeering conspiracy or extortion attempt constitute fiscal damages recoverable under current racketeering laws, otherwise plaintiff seeks, is informed, and, and believes he is entitled injunctive relief under RICO laws.

### 5. Copyright Trolling (for-profit Copyright Abuse)

61.     Copyright trolling is a form of copyright abuse in which the copyright holder seeks to use their copyright of a work to obtain personal profits, usually via phony lawsuits. The only way to turn copyright ownership into something profitable is to knowingly create or allow transactions that cause a copyrighted work to be copied and/or to willfully fail or refuse to prevent the copying of said work to create a circumstance that creates the illusion of copyright infringement.

62.     Copyright trolling as a cause for harm is directed at the specific intent of a copyright holder to use their copyrights to victimize others for personal gains.

63.     Plaintiff is informed, believes, and alleges that NSI

knowingly used a service that enabled or allowed people to copy their work for the purpose of suing people.

64.     Plaintiff is informed, believes, and alleges that NSI has used this service at least four times in the past (3:10-cv-05863, 5:10-cv-05864, 8:12-cv-01291, and 3:2011-cv-02770), whereby plaintiff is informed, believes, and alleges that NSI had personal knowledge that the use of the CEG's monetization service would result in people copying and distributing the work they had the CEG monitor.

65.     Plaintiff is informed, believes, and alleges that NSI used the CEG's monetization service to profit via lawsuit from copying, that had not yet happened, of a torrent file that may or may not have existed at the time of contracting the CEG. Plaintiff is informed, believes, and alleges that NSI knew prior to using the service that the only way to profit from its use was to enable or otherwise allow the general public to copy and/or distribute their work.

66.     Plaintiff is informed, believes, and alleges that NSI willingly used a service that they personally knew would not prevent any copying or distribution of their work.

67.     Plaintiff is informed, believes, and alleges that NSI willfully and knowingly abused its' supposed copyright and copyright law for the purpose of harassing, extorting money from, and to otherwise cause general harm to the plaintiff and similarly stipulated victims.

## B. CEG

### 1. Inducement/barratry

68.    Plaintiff is informed, believes, and alleges that the CEG openly advertised (Exhibit C), and now more discretely advertises, settlement based litigation for "copyright infringement".

69.    Plaintiff is informed, believes, and alleges that the CEG achieves its' settlement directed service by offering to its clients a service that secretly monitors any copying or specific torrent files without preventing said copying.

70.    Plaintiff is informed, believes, and alleges that the CEG's clients are fully aware of the secret monitoring and that copying will not be prevented.

71.    Plaintiff is informed, believes, and alleges that the CEG's advertising of a settlement based "monetization" service directed at copying that has yet to happen that is also at no cost to the copyright holder induces and induced copyright holders to abuse their copyrights for personal gains.

72.    Plaintiff is informed, believes, and alleges that the CEG willfully and knowingly seeks to profit from the inducement of false litigation and a form copyright abuse known as copyright trolling.

73.    Plaintiff is informed, believes, and alleges that the CEG willfully induces its' clients to engage in willful conduct that is intended induce fear, stress, emotional duress, and

psychological duress to more easily procure settlements from its' clients' victims.

74.   Plaintiff is informed, believes, and alleges that the CEG knows and knew that their service was not geared towards copyright protection, but rather a way to turn downloading torrents into something profitable (Exhibit D).

75.   Plaintiff is informed, believes, and alleges that the CEG never intends for any of its advertised settlement-driven "litigation" to reach fruition, meaning that they specifically desire to have each case avoid going to trial to avoid being exposed the fact that their advertised lawsuits are groundless.

### 2. Conspiracy/Aiding False and Malicious Litigation

76.   Plaintiff is informed, believes, and alleges that the CEG directly profits from and helps to create the false and malicious lawsuits that are filed against their client's victims.

77.   Plaintiff is informed, believes, and alleges that the CEG provided evidence and an "expert's" declaration while deliberately avoiding informing courts of their personal and fiscal interests in the lawsuits they sold to their clients.

78.   Plaintiff is informed, believes, and alleges that the CEG secretly monitors torrents to entrap victims, such as the plaintiff, and aids in the extortion of money from them, at the request of their clients.

79.   Plaintiff is informed, believes, and alleges that the CEG

provides their clients with the legal counsel who files the frivolous and malicious lawsuits against its' clients' the plaintiff and other victims.

80.    Plaintiff is informed, believes, and alleges that the CEG conspires with its clients to create the false lawsuits it uses to obtain profits for the CEG, their client, and their respective attorney partner.

### 3. Copyright Trolling

81.    Although the CEG is not the copyright holder, by conspiring to and aiding in the act of copyright trolling, the CEG has engaged in the act of copyright trolling themselves.

82.    Plaintiff is informed, believes, and alleges that the CEG's monetization service is the service that NSI knowingly used that enabled or allowed people to copy their clients' work for the purpose of suing people, such as the plaintiff.

83.    Plaintiff is informed, believes, and alleges that the CEG enables copyright holders to abuse their copyrights by entering into contracts to monitor a specific torrent file of their clients' works for the purpose of suing people who haven't yet copied their clients' works.

84.    Plaintiff believes and alleges that the CEG partakes and enables copyright trolling by advertising and providing a third-party, secret monitoring service that allows copyright holders to willfully turn a blind eye to any copying of their works for the purpose of suing unsuspecting victims using false claims of

infringement.

85.     Plaintiff is informed, believes, and alleges that the CEG
knows it could not profit from any copying that is prevented and
thus has specifically designed their service to not prevent
copying of works and to encourage copyright holders to also not
prevent the copying of their works.

86.     Plaintiff is informed, believes, and alleges that the CEG
willfully and knowingly encouraged NSI to willfully and
knowingly abuse their supposed copyrights and copyright law for
the purpose of harassing, extorting money from, and to otherwise
cause general harm to the plaintiff and similarly stipulated
victims.

### 4. Racketeering

87.     Plaintiff is informed and believes that under current
racketeering laws the filing of fraudulent and malicious
lawsuits in order to scare people into paying "settlements" is
an act of racketeering.

88.     Plaintiff is informed and believes that racketeering is
illegal under 18 USC § 1961 et. Seq. Plaintiff is informed,
believes, and alleges that CEG is the ringleader and mastermind
behind this scheme.

89.     Plaintiff is informed, believes and alleges that the CEG
deliberately created a service, which includes providing capable
legal counsel, to induce copyright holders to commit acts of
extortion for the CEG's personal gain. Although it is the right

holder who is essentially making the demands for money, the demands originate from the CEG's advertised scheme and are carried out by the CEG and their partnered attorneys.

90.     Plaintiff believes and alleges that the CEG's scheme is designed to enable them to place any blame of illegal activity solely on the copyright holder. However, Plaintiff believes and alleges that NSI and other similar "clients" could not have carried out these scam lawsuits, against the plaintiff and other victims, if not for the services and attorneys the CEG knowingly provided.

91.     Plaintiff believes he suffered no property damage or fiscal damages as a result of their racketeering, however plaintiff has suffered costs of litigating against the CEG produced lawsuit which has resulted in fiscal losses. Plaintiff wishes for the court to clarify if litigation expenses resulting from fighting a racketeering conspiracy or extortion attempt constitute fiscal damages recoverable under current racketeering laws, otherwise plaintiff seeks, is informed, and believes he is entitled injunctive relief under RICO laws.

### 5. Fraudulent Misrepresentation

92.     Plaintiff believes and alleges that the CEG is not licensed to engage in private investigation as required by California state law.

93.     Plaintiff is informed, believes, and alleges that the CEG deliberately misrepresented itself to the courts as an

uninterested party by refusing to inform the courts of their personal interests.

94.     Plaintiff believes and alleges that the CEG and John Nicolini are not trained in copyright law and deliberately misrepresented the copying complained of as "infringements" to further their personal goals and agenda in courts all across the country. Plaintiff believes that by willfully and knowingly misrepresenting each victim's, such as the plaintiff, transaction as an act of infringement, the CEG intended to aid their clients and partnered attorneys into deceiving the courts to allow them early discovery for their own personal gain.

95.     Plaintiff believes that if the CEG had represented themselves and their attorneys before the courts honestly, not a single unbiased judge would have allowed early discovery for the identities of the people the CEG was interested in having sued.

96.     Plaintiff believes and alleges that the CEG willfully and deceptively misrepresented itself as an uninterested party to assist its' clients in harassing and extorting money from the plaintiff and their other victims.

### C. Attorney Marvin Cable

### 1. Filing False and Malicious Litigation

97.     Plaintiff is informed, believes, and alleges that Attorney Marvin Cable used to be a copyright law defense attorney before he became a "copyright troll".

98.     Plaintiff is informed, believes, and alleges that Attorney

Marvin Cable is a partner of the CEG (Exhibit E).

99.     Plaintiff believes and alleges that based on Mr. Cable's professional experience, he knows and knew, prior to filing any of the CEG originating lawsuits he filed against the plaintiff and similarly stipulated victims, that copyright infringement did not occur.

100.    Plaintiff is informed, believes, and alleges that on July 30, 2012, before the honorable Judge Leo Sorokin, Mr. Cable conceded that suing subscribers of an internet service without knowing if they were infringers was in bad faith. Plaintiff is informed, believes, and alleges that Mr. Cable only threatened to sue subscribers of an internet service and, based on his professional experience, knew that none of them committed copyright infringement.

101.    Plaintiff is informed, believes, and alleges that Mr. Cable knowingly filed all the CEG lawsuits for the purpose of extorting money for his, the CEG's and their co-conspirators' (clients') personal gain.

102.    Plaintiff is informed, believes, and alleges that MR. Cable willfully  engage conduct that is and was intended induce fear, stress, emotional duress, and psychological duress to more easily procure "settlements" from his and his clients' victims.

103.    Plaintiff is informed, believes, and alleges that the cookie-cutter complaint was written by Mr. Cable. Considering the vague and identical nature of the complaints, plaintiff

believes and alleges that Mr. Cable drafted the complaints based on the CEG's processes as opposed to any specific facts relevant to each case. Plaintiff believes and alleges that Mr. Cable deliberately crafted each complaint to hide the truth about the CEG's scam and how there is not a valid copyright infringement claim.

104.    Plaintiff believes and alleges that any attorney with a shed of integrity would not have filed any of the lawsuits filed by Mr. Cable  due to being unethical, fraudulent, and fictitious. Plaintiff believes and alleges that Mr. Cable intended to pass all the responsibility of the lawsuits solely on his clients, however Federal law does not condone such practices as knowingly filing false, malicious, and frivolous lawsuits and Massachusetts law forbids it.

105.    Plaintiff is informed, believes, and alleges that Mr. Cable, acting as an attorney, willfully and knowingly filed a false and malicious lawsuit against the plaintiff on May 26, 2012.

106.    Plaintiff is informed, believes, and alleges that Mr. Cable, acting as an attorney, willfully and knowingly filed a false and malicious lawsuit against the similarly stipulated victims on various other dates throughout the year of 2012.

## 2. Libel/Defamation of Character

107.    Plaintiff is informed, believes, and alleges that the claims of copyright infringement against the plaintiff are

false. Plaintiff is informed, believes, and alleges that Attorney Marvin Cable knows the same to be true. Plaintiff is informed, believes, and alleges that Attorney Marvin Cable filed his co-conspirators complaint with utter disregard to the fact that copyright infringement did not occur.

108.   Plaintiff is informed, believes, and alleges that Mr. Cable could not positively identify any of his victims as an "infringer", if infringement occurred, based on an IP address. On July 30, 2012, at a hearing before the honorable Judge Leo Sorokin, Mr. Cable conceded to this fact. Plaintiff is informed, believes, and alleges that Mr. Cable willfully and knowingly filed approximately forty lawsuits against subscribers knowing the same to be true.

### 3. Fraudulent Misrepresentation

109.   Plaintiff is informed, believes, and alleges that Mr. Cable used his authority and expertise as an attorney to trick the plaintiff and similarly stipulated victims into thinking that they infringed upon the copyrights of his co-conspirators.

110.   Plaintiff is informed, believes, and alleges that Mr. Cable deliberately misrepresented the facts of the matter to trick the plaintiff and similarly stipulated victims into thinking that they infringed upon the copyrights of his co-conspirators.

### 4. Racketeering

111.   Plaintiff is informed, believes, and alleges that Marvin Cable conspired to and followed through with, knowingly filing a

frivolous lawsuit, with no intention of pursuing litigation, for the purpose of extracting unjust and undue settlements from the plaintiff and similarly stipulated victims.

112.   Plaintiff believes and alleges that Marvin Cable took the initial steps of their extortion scheme by creating and filing a frivolous lawsuit and deceptively requesting discovery, but were blocked by plaintiff's actions of filing a motion to quash/dismiss and by filing a counter claim.

113.   Plaintiff is informed, believes, and alleges that Marvin Cable has profited from extorting money from Doe defendants and intended to and attempted to do the same to the plaintiff.

114.   Plaintiff is informed, believes, and alleges that Mr. Cable used both the embarrassing nature of pornographic material coupled with the threat from a fraudulent lawsuit to scare and embarrass the plaintiff  and similarly stipulated victims to extort "settlements" from them. Plaintiff is informed and believes that under current racketeering laws the filing of fraudulent and malicious lawsuits in order to scare people into paying "settlements" is an act of racketeering.

115.   Plaintiff is informed and believes that racketeering is illegal under 18 USC § 1961 et. Seq.

116.   Plaintiff is informed, believes, and alleges that Mr. Cable willfully and knowingly filed a fraudulent lawsuit with malicious intent to scare the plaintiff and similarly stipulated victims into paying him money to avoid being sued.

117.    Plaintiff believes he suffered no property damage or fiscal damages as a result of their racketeering, however plaintiff has suffered costs of litigating against Marvin Cable's lawsuit which has resulted in fiscal losses. Plaintiff wishes for the court to clarify if litigation expenses resulting from fighting a racketeering conspiracy or extortion attempt constitute fiscal damages recoverable under current racketeering laws, otherwise plaintiff seeks, is informed, and believes he is entitled injunctive relief under RICO laws.

### 5. Copyright Trolling

118.    As an attorney, Marvin Cable has a specific responsibility to defend the legal rights of his clients. However, when his "clients" ask him to engage in unlawful behavior against others, he has a specific responsibility to the potential victims and his profession to refuse to work or perform such actions for his client. Plaintiff is informed, believes, and alleges that Mr. Cable disregarded his professional responsibilities and participated in the copyright trolling scam, perpetuated by the CEG, for his own personal gains against the plaintiff and similarly stipulated victims.

119.    Plaintiff is informed, believes, and alleges that Mr. Cable originally and knowingly filed the fictitious copyright infringement claims at the behest of his co-conspirators against the plaintiff and similarly stipulated victims.

120.    Plaintiff believes and alleges that Mr. Cable never

intended to have any case go to trial to avoid public exposure
of the scam as a scam.

## VIII. Damages Caused

121.   Plaintiff is on disability for Post Traumatic Stress
Disorder (PTSD) that was not caused by this incident or any
incidents similar to the one being complained of.

122.   Plaintiff is not normally prone to unprovoked anxiety
attacks, unprovoked long bouts of depression, unprovoked loss of
appetite, unprovoked suicidal thoughts or feelings, unprovoked
self destructive thoughts or feelings, unprovoked and extreme
feelings of worthlessness, or periods of unprovoked and
excessive stress or anxiety.

123.   As a direct result of all three defendants' actions,
plaintiff has suffered : anxiety attacks, loss of sleep,
nightmares, abnormal depression, periods of excessive stress,
and periods of excessive anxiety.

124.   As a direct result of all three defendants' actions,
plaintiff has experienced: extreme feelings of worthlessness,
severe humiliation and embarrassment, feelings and thoughts of
suicide, self destructive thoughts and emotions, and fear of a
$150,000 judgment I was threatened with.

125.   As a direct result of all three defendants' actions,
plaintiff has suffered great and ruinous damages to his current
relationship which continue to persist to this day.

126.   All three defendants interfered with necessary and healthy

mourning of a family member who passed away on July 3rd, 2012.

127.    To defend himself in court, plaintiff feels that he was forced to expose himself to irreparable public humiliation as well as humiliating himself before the courts.

128.    Plaintiff's claimed damages are a direct result of all three defendants' frivolous and malicious actions. Defendants have acted in such described manners against plaintiff and others with the intention of causing such harms to coerce settlements and extort money. Defendants maliciously participated in frivolous litigation against the plaintiff with reckless disregard to plaintiff's condition.

129.    Plaintiff understands that stress is a normal experience during litigation. However when a party, such as all three defendants, files or partakes in litigation of a lawsuit that is intended to inflict stress and anxiety on defendants, for the purpose of intimidating said defendants, coercing settlements, and to otherwise harass defendants, the stress, anxiety, and destructive emotions defendants experience become a direct product of the party's malicious intentions and unlawful actions.

### IX. Relief Sought

130.    Plaintiff prays for the court to place permanent injunctions against the Copyright Enforcement Group and its employees forbidding them from offering "monetization" or similar services to any future clients.

131.    Plaintiff prays for the court to place permanent injuctions
        against the Copyright Enforcement Group and its employees
        forbidding them from monitoring torrents for activity.

132.    Plaintiff prays for the court to place permanent injuctions
        against the Copyright Enforcement Group and its employees
        forbidding them from offering legal testimony in copyright
        infringement lawsuits that is in favor of early discovery
        against Does or is in favor of another copyright holder's
        lawsuit.

133.    Plaintiff prays for the court to order the Copyright
        Enforcement Group to withdraw all evidence and declarations from
        all lawsuits it is presently aiding and to deem all evidence and
        declarations provided by the CEG as inadmissible.

134.    Plaintiff prays for the court to award to the plaintiff
        $150,000 per infringement accusation in punitive damages against
        the Copyright Enforcement Group for aiding and inducing
        copyright trolling. ($300,000 total)

135.    Plaintiff prays for the court to place permanent injuctions
        against Attorney Marvin Cable forbidding him from practicing
        copyright law in any way, shape, or form. Alternatively
        plaintiff prays for the court to revoke Marvin Cable's licenses
        to practice law for his participation in what is essentially
        organized crime.

136.    Plaintiff prays for the court to award to the plaintiff
        $150,00 per infringement accusation in punitive damages against

Attorney Marvin Cable for copyright trolling and aiding copyright trolling. ($300,000 total)

137.   Plaintiff prays for the court to strip New Sensations of all their copyrights for engaging in a for-profit copyright abuse scam. The DMCA still provides those without copyrights ways to protect their works, such a ruling removes their ability to sue for statutory damages.

138.   Plaintiff prays for the court to award to the plaintiff $150,000 per infringement accusation in punitive damages against New Sensations for copyright trolling. ($300,000 total)

139.   Plaintiff prays for the court to order all three defendants to repay to each doe they coerced settlements from three times the amount settled for with relation to file 022aab5cffdc7d012751cbb0f0c62f2dbec29a83.

140.   Plaintiff prays for the court to order all three defendants to disclose to the court their "cut" of all other settlements obtained through this scheme, across all lawsuits, and to repay to the respective Does three times their portion of the profits unduly obtained by the defendants, in all lawsuits, in this matter.

141.   Plaintiff prays for the court to award the plaintiff with up to $1,000,000 from each defendant for intentionally inflicted emotional damages.

142.   Plaintiff prays for the court to award the plaintiff with triple costs of litigation case 1:12-cv-10944 from all

defendants (roughly $1,000 in costs).

143.    Plaintiff prays for the court to award any and all costs incurred by litigating this case.

144.    Plaintiff prays for the court to award the plaintiff with up to $1,000,000 from each defendant for inducing the filing of and/or the filing of a lawsuit against the plaintiff that was frivolous, malicious, and false.

145.    Plaintiff prays for the court to declare that not protecting one's copyrighted works or using such services similar to the CEG's montization service complained of herein does not entitle a copyright holder to copyright protections.


The Plaintiff,

James Dore

1/15/2013