# U.S. District Court: District of Massachusetts

IN CLERKS OFFICE

2013 JUL -3  A II: 58

U.S. DISTRICT COURT
DISTRICT OF MASS.

**James Dore**
**Plaintiff**

**v.**

## New Sensations Inc. et al
## Defendants

### 1:13-cv-10315 – FDS

## Plaintiff's Opposition to Defendants' Motion to Dismiss

### Introduction

Now comes the plaintiff in opposition to the defendants' motion to dismiss. The motion is loaded with groundless assertions, defenses reliant on deliberate omissions of fact, defenses with no shown or existent material support, defenses reliant on improper citation of case law, and other meritless arguments. Plaintiff is not surprised and neither should the court be surprised at this, Mr. Cable has a shown and known history of such unethical practices and has even attempted to use case law to throw his own weight around against judges of this court.

If Mr. Cable is so willing to lie to the courts and cheat innocent people out of their money for his own personal profits, then the question must be asked what he is willing to do in order to defend his unlawful income.

There are various reasons why the defendant's motion should be

denied. Those reasons are argued in the sections below, however the court should still be aware of the defendants creative abuses of the legal system in pursuit of their own non-judicial scheme and consider such facts when denying the defendants requests.

## Arguments

### Plaintiff was the Intended Target of Defendants' Lawsuit

In their motion to dismiss, the defendants assert a number of defenses based on the plaintiff being a "non-party witness", plaintiff will proceed to argue those defenses to further show the assertions invalidity. Never the less, the plaintiff was the intended target of the lawsuits filed.

Facts already known to the court confirm the truth of this matter. Although the court found that the complaint was directed at infringers, the court also found that all the Doe defendants listed were the subscribers of an internet service and were likely not the infringer. Even though the defendants agreed with the court's finding, they did so untruthfully as they have not sought to correct or clarify that matter with the court. Plaintiff, had also received a court directed notice from Comcast, which was sent to them by the defendants, informing the plaintiff that **HE**, and no one else was being sued as Doe 64 in case 1:12-cv-10944. After agreed that telling subscribers that they had been sued was wrong, the defendants took no such action to remedy the issue.

The known facts specifically show:

1) the defendants were suing the people identified by IP address

(subscribers);

2) the defendants were caught suing subscribers instead of infringers;

3) the defendants lied to the courts by stating and agreeing that infringers, not subscribers, were the intended defendants;

4) the defendants, behind the court's back, refused to inform subscribers, in all cases not overseen by Judge Sorokin, that they were not being sued.

5) The defendants refused to seek discovery directed at infringers, instead they continued to seek discovery against subscribers against the court's orders.

6) In case 1:12-cv-10817, defendant and co-conspirator served summons and complaint on a subscriber and then sought default and default judgment.

Especially because the defendants have south the default and default judgment of a subscriber, the defendants have no legal standing to challenge the fact that the plaintiff was a party to the lawsuit since the defendants did factually sue the plaintiff with no intention of pursuing a real "ingringer" or informing the court that the plaintiff was not the actual defendant.

## Defendants Have Failed to Show They are Entitled to Immunity Under the Litigation Privilege

First of all, the "absolute litigation privilege" is not as absolute as the defendants wish it was, in fact on March 2, 2012,

this court stated that "'Whether an absolute privilege applies is determined on a case-by-case basis, after a fact specific analysis.' Fisher v. Lint, 69 Mass. App. Ct. 360, 365-66 (2007) (citation omitted). In addition, as the parties asserting the privilege, the defendants have the burden of establishing entitlement to the privilege. Meltzer, 193 F. Supp. 2d at 381. On that same day, this court also stated that the doctrine of absolute litigation privilege was motivated by "the public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." Meltzer v. Grant, 193 F. Supp. 2d 373, 377 (D. Mass. 2002) (quotation omitted)."

The question before this court with regards to the litigation privilege is whether or not the defamatory statements and claims were made in an effort to secure justice for the defendants. All the facts say that litigation was never the intention of the filed complaint and since the defamatory claims were not made in an effort to secure justice for his client, neither of the defendants are entitled to immunity under the litigation privilege.

The litigation privilege is often defined as "a type of immunity given for certain acts and statements made in connection with the pursuit of litigation". However, if we look at the cases filed by the defendants when in connection with the CEG, past and present, it becomes obvious that the complaints filed were never intended for litigation. If anything, the complaints filed by the defendants are similar to cases filed by resourceful slanderers. Many courts agree

that resourceful slanderers are too not entitled to absolute immunity saying "It is easily discernible what result would ensue should we condone such an apparent ruse by providing absolute immunity to the resourceful slanderer. The privileged defamation, now a barely tolerated exception, would gain full-fledged legitimization. All that the slanderer would have to do to avoid the consequences of his evil act would be to file the defamatory matter with the court first" Bradley v. Hartford Acc. & Indem. Co. (1973) [30 Cal.App.3d 818]. With today's available technology, it is not uncommon for people, businesses, and organizations to use Google to perform informal background checks on others people, thus being named in a federal lawsuit, which is made public to the internet, will cause a persons name to come up in connection to a particular lawsuit. Merely being connected to a lawsuit is enough to make others pass judgment and can bring with it public scorn. The point being that the resourceful slanderer is no longer required to seek publication of the defamatory claims as the defamation will be made public on its own. Taking that into consideration, the courts must also consider the fact that all of the victims of the copyright trolling scheme are identified as John Does. Now why is this important? Simple, when a party sends a threatening letter demanding some form of payment or else threatening to file a lawsuit against them, typically the defamation is not protected since "the litigation privilege applies to communications made preliminary to proposed judicial proceedings if judicial proceedings are contemplated in good faith and under serious

consideration" Meltzer, 193 F. Supp. 2d at 381, however the defendants appear to be creating a loophole by first filing the lawsuit and then threatening to name their victims as defendants in the defamatory lawsuit if they don't pay up, even though the judicial proceeding was filed in bad faith and without serious consideration. Again, the only difference we are looking at is the fact that the complaint was merely filed first and just as in cases involving resourceful slanderers, there is a clear extrajudicial purpose for the filing of the lawsuit.

Also, in the plaintiff's complaint, the plaintiff details and alleges the defendants use of the defamatory claims of the filed lawsuit for extrajudicial purposes, the defendants having no intention of making their lawsuits whole, that the defendants planned not to pursue the litigation filed prior to filing the lawsuits, that the lawsuits filed are part of a business scheme that involved filing lawsuits with no intention of making those lawsuits whole, and that the defendants intended to use the filed lawsuits for unlawful purposes. Since the court must accept these facts alleged in the complaint as true for the purpose of determining whether or not the allegation should be dismissed, the court should weigh these facts against granting the defendants immunity because they have failed to show the court how they are entitled to immunity under the litigation privilege.

Finally, on November 7, 2012, this court made already determined that the defendants didn't have any intention of actually litigation

they initiated in a hearing on three identical cases, "They [the plaintiffs] have not proposed a discovery plan aimed at identifying the infringers they have sued. Rather, the Plaintiffs request that the Court order disclosure of the third-party subscribers' names so that the Plaintiffs might settle or dismiss their cases on an informal basis...The Plaintiffs' lack of interest in actually litigating these cases as demonstrated by the history of this litigation also weighs against permitting ex parte discovery. Before the Court quashed the subpoenas previously issued, the Plaintiffs had ample time to amend their Complaints with information they might have acquired from the informal discovery process it claims it wishes to pursue. The Plaintiffs never sought to substitute the name of any person for any Doe Defendant...The Plaintiffs' counsel [Mr. Cable] has also repeatedly said to the undersigned, and to other judicial officers of this Court, that he intends to litigate the claims he has brought. Yet to date, counsel has sued well in excess of one thousand Doe Defendants in this District, and as far as the Court is aware, he has never served a Complaint upon a single individual defendant." (1:12-cv-10805 and two others).

The defendants have utterly failed to show the court that they are entitled to immunity under the doctrine of absolute litigation privilege. When determining if the defendants are entitled to immunity, the court should consider the following facts:

1) the court already determined that litigation was not the intention of the lawsuits filed;

2) the defamatory claims were not made in an effort to secure justice for the defendant;

3) Many courts agree that "No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation." Aronson v. Kinsella;

4) the lawsuits filed by the defendants were filed for extrajudicial, unlawful purposes;

5) It is easily discernible what result would ensue should the court condone such an apparent ruse by providing absolute immunity to the copyright troll. The privileged defamation, now a barely tolerated exception, would gain full-fledged legitimization. All that the copyright troll would have to do to avoid the consequences of his evil act would be to file the defamatory matter with the court first.

## Plaintiff's Allegations of Abuse of Process Should not be Dismissed, Plaintiff has Sufficiently Met the Pleading Standard

The defendants have no standing to challenge allegations of abuse of process. The two defenses that seem to be raised in this matter are 1) good faith and 2) that the plaintiff was never served a summons, these defenses are as ridiculous as they are baseless.

First, to address the defendant's claims of good faith: there exists no evidence of good faith, past or present, on behalf of the defendants or any other party who has used the CEG's monetization service. Here the defendants rely on rhetoric rather than on factual

arguments. To begin, the plaintiff alleges that the lawsuit filed by the defendants relied on false claims and intentionally misleading declarations, the plaintiff also alleges that the lawsuits were not intended to be made whole, that the lawsuits were filed as part of an extortion scheme, that the lawsuit filed is part of a non-judicial business model, and that the lawsuit was filed to cause harm and duress to their victims. Since the court must accept these allegations as true, the court must then also accept as true that the lawsuit filed against the plaintiff and similarly stipulated victims was filed by the defendants in bad faith.

Furthermore, the filing of a lawsuit with no intention of making that lawsuit whole is, demonstratively, proof positive of bad faith litigation and ulterior purposes. New Sensations has filed four other lawsuits prior to filing their lawsuits in this court. All four of those lawsuits were never made whole, they were either dismissed voluntarily or dismissed for failure to timely serve. Since the plaintiff has factually demonstrated in his complaint that the defendants used the civil process in order to obtain settlements as part of their settlement based business scheme, the plaintiff has sufficiently demonstrated that the defendants institution of civil action was for ulterior and improper purposes, whereby the plaintiff has sufficiently met the first two requirements to establish an abuse of process claim.

Because the defendants do not challenge there was damage as a result of their actions, the court must accept as true that the

plaintiff has sufficiently established grounds for an abuse of process allegation.

Additionally, if we consider the defendants argument that the plaintiff is a non-party witness, the court must especially conclude that the argument is moot since the defendants informed the plaintiff he was being sued, identified the plaintiff via and other victims by their IP addresses as the defendants, and maintained a lawsuit against the plaintiff and others. Since the defendants took no steps to correct the matter with the court, it is clear that the subscribers were, in fact the intended targets of the lawsuits filed and thus the court must find that process was factually instituted against the plaintiff and other similar victims.

Either way the court tries to look at it, the abuse of process claim is well founded and established with material facts as opposed to the defendants' rhetoric. Even if the matter were to come down to a he said she said kind of issue, the court must side with the plaintiff in this matter as part of the standard procedure involved with a motion to dismiss. Since the plaintiff alleges bad faith institution of process, ulterior and improper purposes, and damages (which are unchallenged) the court must find in favor of the plaintiff and deny the defendants' request for dismissal.

## Plaintiff's allegations of Malicious Prosecution Should not be Dismissed

The defendants grounds for dismissal of this allegation come

down to two claims, 1) that the plaintiff was never a party to the lawsuit and 2) that the plaintiff was never served a summons or complaint and 3) that the lawsuit was not dismissed in favor of the plaintiff.

First, the plaintiff was properly identified by Comcast as Doe 64 in case 1:12-cv-10944 based on the IP address that was provided to the court and to Comcast by the defendants. The fact that the plaintiff was not named in the complaint is wholly a moot point as the plaintiff came forth and represented himself, identifying himself as Doe 64 and at no point did the defendants attempt to challenge the fact that the plaintiff was identified as Does 64. The plaintiff mailed multiple documents to the defendants, thus the defendants knew the plaintiffs mailing address, and the defendants had ample opportunity to serve their complaint and a summons on the plaintiff, the fact they they have refused to do that does not mean that they did not institute a prior civil action against the plaintiff since the plaintiff was in fact properly identified by Comcast as Doe 64. Where is is true that the IP address only identifies the subscriber of an internet service, in case 1:12-cv-10944, the defendants made no effort to correct this matter with the court, instead the defendants maintained their suit against the plaintiff. Thus, what we have is a situation in which either the defendants willfully and knowingly brought a lawsuit against subscribers of internet services or the defendants refused to serve summons and complaints a properly identified defendant. Either way, they did establish a prior civil

action against the plaintiff and if the plaintiff is truly a non-party, even though the plaintiff's IP address allowed Comcast to identify him as Doe 64, then the defendants instituted a prior civil action against the plaintiff without probable cause. Since the facts show that Doe 64 was sued by the defendants and the defendants are now saying that Doe 64 was a witness and not a party to the lawsuit, then they have established on their own the first element of malicious prosecution, that they instituted civil action against the plaintiff without probable cause.

Furthermore, standard of review of a motion to dismiss is to view the facts in a light most favorable to the plaintiff. If this is true, the court must accept these summarized facts already alleged in the complaint as true:

1) the defendants sued the plaintiff in a prior action;

2) the defendant's copyrights were not violated and thus they had no cause for action against anyone;

3) the defendants intention for filing the lawsuit was to extort settlements out of their victims;

4) the plaintiff was severed from the lawsuit.

In accepting the alleged facts as true, the court must agree that the plaintiff has sufficiently established that the defendants did not have any probably cause in filing their lawsuit(s).

Second, the defendants argue that the case was not dismissed in favor of the plaintiff. This point is reasonably arguable since the whole purpose of the filed lawsuits was not to make them whole but to

extract settlements until the matter was dismissed voluntarily or by the court. Also, all it takes for a judge to formally kill a copyright trolling lawsuit is to sever the joined Does for any reason. The whole purpose of the lawsuits is to lump as many people as possible together in order to reduce costs and efforts. By severing the cases, the courts render the litigation unprofitable and severed defendants are almost never pursued because of how much work and effort the troll attorneys would have to expend while risking the possibility of ending up with losses on their business venture. Whereby, the end result of severance or dismissal for any reason is a case that will never be pursued again, essentially equivalent to a dismissal with prejudice. Because the defendants never intended for their case to be heard on its merits, it is impossible for the plaintiff to obtain such a dismissal, and because the lawsuit filed by the defendants wasn't, by any means, a "normal" lawsuit, the plaintiff asks the court to consider weighing the plaintiff's severance against the defendants since the only other likely grounds for dismissal would be failure to timely serve.

## **Defendants have no real standing to challenge allegations of copyright trolling**

Defendants do not contest the fact that they engaged in a pattern of behavior known as copyright trolling, the only defense to the allegation they raise is a claim that copyright trolling is not legally cognizable or actionable, because the defendants do not contest this allegation on the merits but merely because the

allegation is unprecedented, it is at the sole discretion of the court to determine whether or not to establish copyright trolling as an actionable cause of harm.

In considering whether or not to establish a precedent for copyright trolling as an actionable cause of harem, the court must consider all known facts and possibilities resulting from its decision. To begin, on October 2, 2012, this court was the first to actually define copyright trolling, or at least what a copyright troll is. In case 1:12-cv-10716, Judge William G. Young issued an order in which he recognized that "a copyright troll is an owner of a valid copyright who brings an infringement action 'not to be made whole, but rather as a primary or supplemental revenue stream'". The following month, Judge Leo Sorokin in case 1:12-cv-10805 entered with the court a finding on the defendants behavior that is consistent with Judge Young's finding, ""They [the plaintiffs] have not proposed a discovery plan aimed at identifying the infringers they have sued. Rather, the Plaintiffs request that the Court order disclosure of the third-party subscribers' names so that the Plaintiffs might settle or dismiss their cases on an informal basis...The Plaintiffs' [discovery] proposal – i.e., that the Court permit the Plaintiffs to subpoena the names of the subscribers and that the Court then leave it to the Plaintiffs to figure out the rest pursuant to informal communications – is unacceptable. The governing case law permits ex parte discovery in the presence of a discovery plan tailored to the identification of the defendants .Further, the Plaintiffs' prior history of communications with the subscribers in these cases also weighs against

permitting ex parte discovery.. The Plaintiffs' lack of interest in actually litigating these cases as demonstrated by the history of this litigation also weighs against permitting ex parte discovery. Before the Court quashed the subpoenas previously issued, the Plaintiffs had ample time to amend their Complaints with information they might have acquired from the informal discovery process it claims it wishes to pursue. The Plaintiffs never sought to substitute the name of any person for any Doe Defendant.". Courts all across the country have agreed that they will by no means assist parties like the defendants in their extortion-business model, citing Judge Otis Wright, "The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial.", and although severing doe defendants from the mass litigation has proven a successful means of killing the lawsuits as they pop up, effectively turning the courts into a glorified game of copyright-whack-a-mole, the courts are yet to implement any true doctrine that is effective at killing the extortion based business model and furthermore, copyright trolls have been taking full advantage of the courts hesitation to act against them and have been working ways to circumvent the courts preventative and protective efforts. Thus, it is imperative for the courts to establish a doctrine directed at punishing this malicious and criminal business that abuses the court's resources in the name of profit.

The court should consider using this lawsuit to set the precedent for an anti-copyright trolling doctrine. Since the defendants see it fit to use the court to further their own questionable business practices, and the

courts seem little able to thwart the issue by dismissing noticeably troll lawsuits as they pop up, the courts need to establish the rights of the victims of this practice to seek redress by setting a precedent that allows victims to directly target the illegitimate scheme. In doing such, the created precedent alone will be enough to dissuade most trolls from filing their lawsuits and clogging up the courts. Although it will not prevent all copyright trolling, it will provide the courts and victims with a means of formally stopping the business as a whole.

Alternatively, the court may, at its discretion, choose not to enforce the copyright trolling claim by dismissing it and we all know what the result of that will be. By legitimizing the practice, more and more copyright troll lawsuits from the ever growing copyright troll industry will be filed, clogging up the courts, wasting the courts resources, and ruining the lives of many more innocent victims as copyright trolls will only continue to use the court to further their business agendas.

## Defendants have no standing to challenge allegations of fraudulent misrepresentation and Filing malicious lawsuits

### a. fraudulent misrepresentation

So what Mr. Cable is trying to tell the court is that he has some sort of golden ticket that allows him to freely use the courts to engage in acts of organized crime, no not that he is able to but that it is apparently his right to do so. It would seem that Mr. Cable forgets "'Whether an absolute privilege applies is determined on a case-by-case basis, after a fact specific analysis.' Fisher v. Lint, 69 Mass. App. Ct. 360, 365-66 (2007) (citation omitted). In addition, as the parties asserting the privilege, the

defendants have the burden of establishing entitlement to the privilege. Meltzer, 193 F. Supp. 2d at 381. On that same day, this court also stated that the doctrine of absolute litigation privilege was motivated by "the public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." Meltzer v. Grant, 193 F. Supp. 2d 373, 377 (D. Mass. 2002) (quotation omitted)". Here, again, Mr. Cable, he does not want, he expects the courts to shield him and his client from liability resulting from their own actions. Mr. Cable basis his claim to privilege solely on his use and abuse of the legal system, not for what ends he used the legal system. Because the defendants had no real intention of seeking justice, an indisputable fact upon review of NSI's litigation history and any litigation derived from the CEG's monetization scheme, the defendants are not entitled to immunity under the litigation privilege. Again, litigation privilege is often defined as "a type of immunity given for certain acts and statements made in connection with the pursuit of litigation", and even this court took notice of the defendants lack of interest in pursuing litigation in identical lawsuits also being represented by Marvin Cable and also part of the CEG's business scheme. So again, we must ask what actually entitles them to immunity under the litigation privilege? Furthermore, we must not for get the lessons from Bradley v. Hartford Acc. & Indem. Co. (1973) [30 Cal.App.3d 818] when dealing with lawsuits filed with non-judicial intentions such as when dealing with resourceful slanderers, "It is easily discernible what result would ensue should we condone such an apparent ruse by providing

absolute immunity to the resourceful slanderer. The privileged
defamation, now a barely tolerated exception, would gain full-fledged
legitimization. All that the slanderer would have to do to avoid the
consequences of his evil act would be to file the defamatory matter
with the court first".

Secondly, fraudulent misrepresentation is not the same as
defamatory remarks made against another party. In this instance, the
fraudulent misrepresentation is the result of Mr. Cable's misuse of
his expertise and use of false allegations to convince innocent
people that they were liable to his co-conspirators in order to
convince his victims to pay up. This manner of fraudulent communication
goes well beyond what may be considered protected speech because extorting
money from innocent victims for profit is very different from pursuing
justice for a client. Furthermore, the majority of jurisdictions hold
that the privilege does not shield attorneys from fraud claims. (*N.Y.
Cooling Towers, Inc. v. Goidel*, 805 N.Y.S.2d 779, 783 (N.Y. Sup. Ct.
2005);*Clark, supra*, 624 S.E.2d at 871-72.). For these reasons, the
plaintiff feels that the defendants have failed to show how they are
entitled to immunity under the litigation privilege and thus lack
standing to challenge the allegation.

## b. Filing false and malicious litigation

First plaintiff would like to apologize to the court over any confusion
related to this allegation, plaintiff misstated the allegation in more lay
terms, plaintiff asks the court to consider the allegation as abuse of
process, the proper phrasing for the allegation. As grounds, paragraphs 99

and 100 of the complaint allege Mr. Cable's use of process and paragraphs 101 – 104 allege Mr. Cable's use of process for improper and unlawful purposes, damages are still alleged in the damages section of the complaint, whereby plaintiff has sufficiently established an abuse of process allegation. Plaintiff apologizes again for the misnomer and would ask the court to not that all paragraphs cited for the purpose of this clarification are all found under the filing false and malicious litigation section of the complaint, directed at Mr. Cable.

Second, Mr. Cable has no legal standing to challenge abuse of process allegations with the litigation privilege. While the litigation privilege immunizes parties and their attorneys from most tort liability, one claim appears to be excepted from the privilege: malicious abuse of process. *See Stetter v. Blackpool, LLC*, 2010 U.S. Dist. LEXIS 111869 at 5 (D. Ariz. Oct. 19, 2010). ("…parties to litigation are granted an absolute privilege from tort liability with the exception of malicious prosecution and abuse of process claims.") . Even though the allegation was misnamed by the plaintiff, there is no reason for the court to extend immunity to the defendant. If the litigation privilege were an absolute defense, no claims could ever be brought against lawyers for the wrongful misuse of legal process, in which the courts may as well lay out the welcome mat for more sham lawsuits.

## The Court Must Determine the Rights of the Parties With Regards to the RICO Allegations

Little over a year ago, this court heard and allowed a case for RICO violations based on threatened and filed vexatious litigation (Shirokov v. Dunlap, Grubb & Weaver PLLC et al 1:10-cv-12043-GAO). The court allowed the allegations to move forward since the attempted extortion was derived from hollow threats of litigation if the parties didn't pay "settlements", much like in this case, and since RICO laws base extortion claims off of a state's own applicable extortion laws, in Massachusetts the relevant law is "Attempted Extortion" which is cognizable for RICO in this state, dismissal of RICO allegation on the basis that attempted extortion is not cognizable for RICO in other states would be wholly inconsistent with RICO laws.

Before continuing it seems there needs to be a clarification of sorts, the $1,000 in costs claimed as damages are not associated with the time wasted at the hearing that Mr. Cable simply refused to show up to to avoid having his lawsuits dismissed on the merits. The $1,000 in costs claimed by the plaintiff was a rough estimate of all the expenditures required as a part of litigation the vexations lawsuit brought against him, such costs include: travel expenses, PACER usage, mailing costs, and printing costs. Each item considered for costs is a physical expenditure that results directly from the defendants filing of a lawsuit against the plaintiff and are still being paid off to date. Which it may also be noted that after receiving the last PACER bill for the most recent quarter in which

PACER was used by the plaintiff, the costs have increased to between $1,300 and $1,400, the plaintiff has to recalculate and determine if he wants to amend the complaint to include this additional amount. Although these damages are directly a result from litigation filed against him, upon further review of the matter, the plaintiff concedes that the damages claimed may not meet the standard required to meet the RICO allegation, "the expenditure of legal fees is ordinarily not considered an injury for RICO purposes, unless the legal fees were expended as an "intended consequence" of a defendant's racketeering activities. Lemelson v. Wang Labs., Inc., 874 F. Supp. 430, 433 (D. Mass. 1994) (citations omitted);...In Lemelson, the Court found that the costs incurred in investigating and defending vexatious litigation constitute a sufficient RICO injury to survive a motion to dismiss. 874 F.Supp. at 433. However, that case is distinguishable. First, the parties were competitors and the expenditure of attorneys' fees by the victim was an intended consequence of the alleged racketeering scheme. Id. at 432-33. Here, the expenditure of attorneys' fees is not an intended consequence, but a byproduct, of the defendants' alleged scheme: the intended consequence was the payment of settlements to the defendants (Complaint at ¶¶ 324-325). There are no allegations that the object of the defendants' action was the expenditure of legal fees. The object of the alleged scheme was the payment of settlement amounts." Judge Boal 1:10-cv-12043-GAO. Because the costs related to litigation were not the intended consequence of the defendants racketeering

scheme, but a byproduct, the plaintiff concedes that he may not have sufficiently established the required grounds for a RICO allegation seeking monetary relief. However, the plaintiff has already set forth in his complaint that his expenditures may not entitle him to monetary relief but may allow injuctive relief, whereby the plaintiff asks the court to determine the rights of the parties regarding the RICO allegation.

On another note, the defense raised appears to be a double-edged sword as it becomes logically impossible for the defendants to successfully invoke the litigation privilege and succeed in beating the RICO allegations at the same time. Simply put, if litigation costs were an intended consequence of the defendants actions, the litigation privilege may apply and the RICO allegations would survive the motion to dismiss because the legal costs would constitute cognizable damages under RICO; but if the legal costs incurred are not cognizable under RICO, then the defendants are not entitled to immunity because litigation was not the intended consequence of filing their lawsuits.

Even still, the plaintiff concedes the fact that his legal costs are not cognizable under RICO for the purpose of obtaining monetary relief because litigation was not an intended consequence of the defendants' lawsuit. However the plaintiff concludes that the rights of the plaintiff to seek injuctions under RICO for having suffered damages, that are neither monetary or property based, that were a direct and intended consequence of the defendants lawsuit.

## Defense Fails to Show Cause As to Why Attempted Extortion Should be Dismissed

Defendants assert that attempted extortion is no basis for a RICO claim and thus attempted extortion allegation should be dismissed, this is utterly stupid. An attempted extortion allegation can stand independent from RICO allegations where RICO allegations are dependent on the extortionist behavior. Because the Attempted extortion allegation is independent from the RICO allegation and furthermore does not rely on the RICO allegation, the defendants have failed to show any cause for dismissing the attempted extortion claim which is cognizable by law.

## Other Considerations

The court needs to consider Mr. Cable's motion and actions very carefully. Mr. Cable has shown this court that is ruthless and willing to say and do whatever in his pursuit of money or to avoid liability for his actions. He has been caught blatantly lying to the judges of this court. He's been caught telling one judge one thing and then doing the exact opposite in front of others. He's done nothing but spew rhetoric and cause unnecessary delays in order to prevent the dismissal of his lawsuits and extend the amount of time he has to extort settlements form his victims. There is nothing in Mr. Cable's recent legal history of NSI's legal history that says

they had any intention actually seeking justice. Furthermore, the lawsuits that were filed were clearly all filed as part of an extrajudicial extortion scam, as plainly shown by the evidence provided, evidence showing the CEG proudly advertising their scam. Also, the court should consider rulings in all 40 of the mass lawsuits filed in this court broadly since the vast majority of them are all identical except for and only except for the name of the content owner and the work complained of, and because each lawsuit was essentially handled by Mr. Cable in the exact same way. Mr. Cable would like to believe that the lawsuits filed are normal lawsuits when the facts say they are anything but normal, a normal lawsuit isn't part of a for-profit, non-judicial extortion scheme. Also, Mr. cable would like the court to believe that the plaintiff abuses the legal system and files vexations litigation, not only are these claims plainly false and without any material support but it is also part of a smokescreen that Mr. Cable is using to distract the court from the real matter at hand, his conduct. Furthermore, it is a sure sign of a weak defense when the defendants rely on **implying** and only implying that the plaintiff may be committing Social Security Fraud even after informing the court that he is unqualified to make such determinations, again all Mr. Cable is doing is using a smokescreen in order to distract the court from his own, known and recognized, misconduct. Smoke and mirrors is all Mr. Cable seems to be good at as he has shown that he feels he need not bother with "tiny details" often refereed to as facts, and so he'll continue to blow smoke and

fog and delay the issue until the plaintiff simply gives up.

## Conclusion

The defendants' motion to dismiss relies heavily on omissions of facts, misleading claims, improper citations of case law, and outright lies. The motion is completely without merit, except for one defense: the litigation costs may not constitute damages for the purpose of RICO allegations. However the defendants largely fail to show any entitlement to relief in light of the facts pled by the plaintiff or already known to this court. Furthermore, the defendants have failed to present any material support for their defenses, in which the court must reject those defenses in favor of the plaintiffs complaint as p[art of the standard of review. Finally, the court should remain ever vigilant to the defendants' attempts to distract the court and create unnecessary delays and for any other unethical tactics the defendants intend to use.

For the reasons asserted in the arguments above, the court should:

1) Reject any defense based on claims that plaintiff is a non party;

2) Reject any defenses based on good faith litigation as there was never presented and does not exist any evidence of good faith by the defendants;

3) Reject any defenses based on the litigation privilege as the defendants failed to show the court why they are entitled to immunity, and because the court has already determined prior to

the filing of this complaint that the defendants filed lawsuits with no intention of seeking justice;

4) Consider that lawsuits filed by the defendants are intended to "Establish a new revenue source" (1:12-cv-10805 Doc. 12). The court should note that the CEG has changed this portion of their website at least twice, first from saying: "Establish a new revenue source while offering infringers multiple settlement options with our Monetization service. Settlement offers are fully customizable and can include opportunities such as hard goods, subscriptions, licensing arrangements, straight settlements or any other offering of your choice. Your options are limitless." To saying: "Settlement offers are fully customizable and can include opportunities such as hard goods, subscriptions, licensing arrangements, straight settlements or any other offering of your choice. Your options are limitless." To now saying: "Options are fully customizable and can include opportunities such as hard goods, subscriptions, licensing arrangements, straight settlements or any other offering of your choice. Your options are limitless." Although their advertised message has changed, their mission has not, to turn the courts into a profit generator for them and their co-conspirators;

5) Deny defendants' request to dismiss defamation allegations;

6) Deny defendants' request to dismiss copyright trolling allegations;

7) Deny defendants' request to dismiss abuse of process allegations

as plaintiff, in his complaint, has bet the burden of sustaining

an abuse of process claim by alleging 1) process was used 2) for

ulterior and improper purposes 3) and there was damage as a

result thereof;

8) Consider the plaintiff's severance from the prior lawsuit as a

favorable dismissal for the purpose of establishing a malicious

prosecution claim given the nature of the prior suit;

9) Deny the defendants' request for dismissal of malicious

prosecution claims;

10)    Consider the plaintiffs "filing false and malicious

lawsuits" allegation as an allegation for abuse of process since

the facts alleged in that allegation are consistent with and

meet the burden required to sustain an abuse of process

allegation;

11)    Deny the defendants' request to dismiss allegations of

filing false and malicious allegations;

12)    Deny the defendants' request to dismiss allegations of

attempted extortion as they have shown no cause for such relief;

13)    Deny, in part, the defendants' request to dismiss allegations of

Racketeering, allowing the plaintiff to seek injunctive relief against

the defendants;

14)    Consider sanctions against the defendants under Rule 11(b).

James Dore
97 Cedar St. Apt. 2
Haverhill, MA 01830
978-914-5459
June 30, 2013

# U.S. District Court: District of Massachusetts

FILED
IN CLERKS OFFICE

2013 JUL -3  A II: 58

U.S. DISTRICT COURT
DISTRICT OF MASS.

## James Dore
### Plaintiff

**v.**

## New Sensations Inc. et al
### Defendants

## 1:13-cv-10315 – FDS

## Certificate of Service

Plaintiff hereby certifies that on this day  _July 1st_,

He mailed a copy of his opposition to the defendants' Nothampton

address.

James Dore
97 Cedar St. Apt. 2
Haverhill, MA 01830
978-914-5459