# United States District Court
# District of Massachusetts

## James Dore
## Plaintiff

**v.**

## Defendants
## New Sensations Incorporated,
## Copyright Enforcement Group LLC,
## Marvin Cable
## First Amended Complaint

### I. Introduction

1. This is a civil action seeking monetary and injunctive
   relief against New Sensations Inc. (hereafter NSI), The
   Copyright Enforcement Group LLC (hereafter CEG), and
   Attorney Marvin Cable for their participation in an illegal
   copyright trolling business/extortion scheme against the
   plaintiff and other similarly stipulated victims.

### II. Parties

2. Plaintiff is named James Dore, is over the age of 18, and
   is located at 97 Cedar St. Apt. 2, Haverhill MA, 01830.

3. Plaintiff is informed and believes that New Sensations Inc.
   (Hereafter NSI) is a company located at 21345 Lassen St.,
   Chatsworth, CA 91311

4. Plaintiff is informed and believes that the Copyright
   Enforcement Group is a party to this matter; however both

the address provided by Jon Nicolini and on the CEG's
website are virtual addresses. Plaintiff asks the court to
keep an open mind to the possibility that the CEG is a
front company for what is actually the partnered attorneys'
activity; much like AF holdings is to Prenda Law. Plaintiff
is still looking for a way to serve the CEG.

5. Plaintiff is informed and believes that Attorney Marvin N.
Cable is located at Law Offices of Marvin Cable, PO Box
1630, Northampton, MA 01061.

**6.** Plaintiff believes that each defendant is also a potential
witness to each other's role in their extortion scheme.

### III. **Jurisdiction**

7. This court has personal and subject matter jurisdiction
over this matter as this action arises out of Federal
Racketeering laws 18 U.S.C. 96 § 1961 et. Seq.

**8.** This Court has personal jurisdiction over this matter as it
involves defendants who are not residents of the same state
as the plaintiff.

### IV. **Venue**

9. Venue is proper in the District of Massachusetts as this is
where all three defendants have carried out their conspired
actions against the plaintiff. Their action took the form
of lawsuit 1:12-cv-10944 where NSI acted as the
"plaintiff", the CEG provided "evidence" and "expert

2

testimony", and Marvin Cable acted as the "attorney" to harass and harm the plaintiff in an attempt to unjustly extort money from him.

**10.**    Venue is also proper since the only plausible counter claim that can arise will be one for "copyright infringement" of which, according to NSI, occurred in this state.

### V. Joinder

**11.**    Joinder of all three parties into one lawsuit is appropriate pursuant to Rule 20 as this action is brought against them for their direct involvement in the same action or occurrence against the plaintiff.

### VI. Background

### A. Litigation History

12.    NSI first filed lawsuits against Doe defendants, using CEG's advertised "monetization" and settlement services, December 23, 2010.  There were two cases filed, they were cases 3:10-cv-05863 and 5:10-cv-05864.

13.    Case 3:10-cv-05863 allowed the mass joinder, during which NSI attained 82 settlements out of 1745 defendants before they voluntarily dismissed all remaining defendants. They are yet to refile against any Doe defendants.

14.    Case 5:10-cv-05864 did not allow the mass joinder. After that, NSI's CEG attorney dismissed the case

voluntarily without stating any grounds therefore.

15.    May 31, 2011, Case 4:11-cv-02835, changed into case
    5:10-cv-05864 when all but one defendant was severed from
    the case, was filed. The case was officially dismissed for
    failure to prosecute because New Sensations failed to serve
    the remaining defendant within a generous amount of time.

16.    No lawsuits against those Doe defendants dismissed
    without prejudice have been filed against them after the
    dismissal.

17.    In all of NSI's current cases, not a single Doe
    Defendant has been served with a complaint and summons
    (Exhibits A: All New Sensations copyright infringement
    lawsuit Docket sheets).

18.    All cases are assisted by the CEG; this is an obvious
    fact that can be noted by the CEG's signature "declaration
    of Jon Nicolini" found in all cases (Exhibits A).

19.    No copyright infringement lawsuit filed by NSI has
    proceeded beyond the filing of a complaint and subpoena.

20.    Plaintiff is aware of one complaint and summons issued
    by Mr. Cable in case 1:12-cv-10817, in which Mr. Cable
    sought a default and default judgment. The default was
    found moot by Judge Stearns because the defendant's mark,
    Mbiti Pierre, was never substituted for Doe 1. Judge
    Stearns gave the defendant 21 days to file an amended

4

complaint naming his mark as the defendant but **only** if he could provide an explanation of the basis under Rule 11 of his belief that Pierre is appropriately named as an infringer, Mr. Cable simply refused to respond and Judge Stearns dismissed the case with prejudice. (1:12-cv-10817 Doc # 30 and 31)

21. September 4th, New Sensations' copyright infringement case 8:12-cv-01291 had an order to show cause issued as to why they had not served the only remaining defendant in that case, defendant was dismissed voluntarily and without prejudice soon after that order was issued (Exhibits B).

22. On July 1st, 2013, NSI voluntarily dismissed case 1:12-cv-10803, a case that had stagnated for seven months. NSI had never filed proof of service or otherwise attempted to name Doe defendants. NSI also never pursued litigation in that matter.

**23.** CEG attorneys typically argue the complaints are often not served because most defendants opt to settle while refusing to disclose to the courts that acquiring the advertised settlements is the sole purpose and goal of the filed lawsuits and that they are distributing (seeding) the files themselves. They omit this fact because disclosure of that fact would warrant sanctions and dismissal for bad-faith litigation and possible investigation for potentially

criminal activity.

## B. Underlying Action

24. On May 26, 2012, defendant NSI filed a false lawsuit
    against the above named plaintiff and many other "Doe"
    defendants, with the help of defendants CEG and Marvin
    Cable.

25. The purpose of this lawsuit was to scare and deceive
    unsuspecting does into believing that they violated
    defendant NSI's copyrights and to essentially threaten them
    with public humiliation.

26. The goal of this was to intentionally induce fear,
    cause emotional damages, and humiliation in order to extort
    "settlements" out of their victims. This was mostly carried
    out by defendant Marvin Cable.

27. NSI's complaint was constructed in a vague and
    deceptive manner, specifically so to omit any facts related
    to the torrent file in question and their personal
    knowledge of having used a service they knew would enable
    or otherwise allow the defendants to have access to their
    work or that they had knew that the CEG was distributing
    their work. NSI also omitted the fact that they did nothing
    to prevent the defendants from accessing and copying the
    work in question and that they intended to use their work
    to sue people before any copying of said work occurred or

6

was known to them.

28.     The complaint was drafted and submitted by attorney
Marvin Cable and was identical to nearly all but 3 of the
40 other complaints filed by him.

29.     The defendants specifically alleged that the plaintiff
and other doe defendants were in fact the defendants
saying: "The true names of Defendants are unknown to the
Plaintiff at this time. **Each Defendant** is known to
Plaintiff only by the **Internet Protocol ("IP") address
assigned to that Defendant** by his, her or its Internet
Service Provider on the date and at the time at which the
infringing activity of each Defendant was
observed."(Emphasis added) Page 1, paragraph 7, of
defendants' complaint.

30.     The above named plaintiff was dismissed from that
action after accumulating approximately $1,000 in costs.

31.     Although the plaintiff was dismissed from the
underlying matter the plaintiff was never liable to NSI to
begin with.

### C. Underlying and Relevant Facts

### i. NSI's Copyrights were not Infringed Upon

32.     Due to NSI's personal knowledge of how the CEG's
monitization service functions and their personal and

7

recorded knowledge that people may copy their work as a result of using that service and their personal knowledge that the CEG was distributing the file, all people sued as a result of the CEG's service have not committed copyright infringement. NSI's complaint is and was without any legal grounds because NSI knew that people may be copying their work and chose to take no action to prevent the copying of the torrent file 022aab5cffdc7d012751cbb0f0c62f2dbec29a83. NSI's complaint is also without grounds because they reasonably knew hat the CEG was distributing their works and chose not to stop that distribution.

33.    A copyright holder giving away copies of their work does not denote copyright infringement by the copier.

34.    A copyright holder allowing people to copy their work does not denote copyright infringement by the copier.

35.    A copyright holder choosing not to prevent the copying of their works does not denote copyright infringement by the copier.

36.    A copyright holder, having personal knowledge of people copying their work, secretly allowing people to copy their work does not denote copyright infringement by the copier.

37.    A copyright holder, having personal knowledge of people copying their work, secretly choosing not to prevent the copying of their work does not denote copyright

8

infringement by the copier.

38.    A copyright holder, having personal knowledge that
their work may be being copied, secretly choosing to turn a
blind eye to people copying their work while hiring someone
else to monitor and record any copying of said work does
not denote copyright infringement by the copier.

39.    Because copyright law is consent dependent and because
setting traps or monitoring works for activity require even
a slight degree of personal knowledge of the copying by the
copyright holder, the copyright holder has no lawful claim
to copyright infringement when they use their works to set
traps or monitor, without preventing, the copying of their
works.

40.    The initial discovery of a work being copied or
distributed, without a copyright holder's consent, does
denote copyright infringement. However, it is what the
copyright holder decides to do after said discovery that
determines if the initial act and any subsequent acts are
copyright infringement and is still copyright infringement.
Willful blindness to this fact does not excuse the
"blizzard" of copyright infringement lawsuits that have
descended upon the courts.

41.    A copyright holder knowing that a work produced may be
copied and uses a third-party monitoring system to remain

9

willfully blind to any copying or distribution of their
work while still having such copying tracked does not have
any legal right to sue for copyright infringement because
they chose to be willfully blind to such actions, before
any recorded copying took place, rather than taking
preemptive preventative actions.

42.    Willful blindness (sometimes called ignorance of law,
willful ignorance or contrived ignorance or Nelsonian
knowledge) is a term used in law to when an individual
seeks to avoid civil or criminal liability for a wrongful
act by intentionally putting himself in a position where he
will be unaware of facts that would render him liable. The
CEG's monetization service is designed to provide a
copyright holder with just that: a way to avoid civil or
criminal liability for a wrongful act by intentionally
putting them-self in a position where they will be unaware
of facts that would render him liable. The CEG does this in
an attempt to create the technical circumstances required
to have a legitimate copyright infringement claim without
the need of a legitimate copyright infringement claim.

43.    Additionally, as with all copyright trolling lawsuits,
NSI interest in being willfully ignorant to the copying is
obvious: if NSI were doing the monitoring or distribution
personally they would be personally liable for all copying

10

and thus could not successfully establish prima facie
infringement to trick the court with. Because they chose to
be willfully blind to the fact of any copying, a fact that
is unarguable since they factually hired the CEG, they
never had the right to sue for copyright infringement in
the first place.

## ii. The Defendants Filed Their Lawsuit with
## No Intention of Litigating

44.     The plaintiff is aware of 11 Judges and 4 Magistrate
Judges who assigned to the defendants lawsuits beyond
granting early discovery. Of those Judges, six have openly
entered or openly agreed with orders or findings that
specifically addressed the defendants' lack of interest in
actually pursuing litigation in cases they filed.

45.     Five of those six judges either found as fact or agreed
with factual findings were Judge Gorton, Judge Ponsor,
Judge O'Toole, Magistrate Judge Sorokin, and Magistrate
Judge Boal. Judge Wolf dismissed actions by the defendants
for failure to prosecute finding that "Plaintiff's
disobedience of the 2013 order persuades the court that the
plaintiff would rather abandon this action than address the
issues raised by this court, which must be resolved before
this court can proceed. All such orders and recommendations

11

with those findings that plaintiff was able to acquire are
attached as Exhibit C.

46.     The court has also noted that Mr. Cable has not once
challenged the courts findings that the defendants had no
intention of actually litigating.

47.     In case 1:12-cv-10538, Judge Stearns dismissed the
action all together because Mr. Cable failed to comply with
the court's order (Exhibit D). The order was an order to
show cause as to why the rest of the Doe defendants should
not have been dismissed after the court dismissed one doe
defendant. This exact scenario happened more than once in
other cases filed by Mr. Cable and also dismissed by Judge
Stearns.

48.     In the underlying lawsuit (1:12-cv-10944), Magistrate
Judge Bowler was noticeable angered when the defendants
simply refused to show up at a hearing on September 13,
2012; Judge Bowler noted this on the docket (docket item
43). A few weeks later Mr. Cable failed to appear at
another hearing in which his excuse was that he only checks
his mail once a week, although he was excused then due to
the short notice given and chastised for his professional
irresponsibility, his excuse still did not explain why he
failed to appear at the previous hearing since he was given
at least two week notice. Mr. Cable is still yet to give

12

any excuse for his failure to appear.

49.     Judges Sorokin, Boal, Ponsor, Gorton, and O'Toole have
all found and/or agreed that the defendants also lacked any
interest in identifying who the actual infringers are.
Rather, they agreed with Judge Sorokin's finding that, in
so many words, even though they claimed to be pursuing
infringers they were instead targeting non-party
subscribers.

50.     On October 31, 2012, Judge Zobel terminated case 1:12-
cv-10537 without stating any cause therefore. A review of
the docket shows a common tie with what over half of the
judges presiding in these cases have complained of; the
defendants' lack of interest in litigation or a failure to
prosecute. Although it is merely speculation, the facts are
consistent with the findings of other judges in this court.

51.     Not only did the Mr. Cable never challenge Judge
Sorokin's or Judge Boal's factual finding that the
defendants had no interest in litigating their cases; Mr.
Cable actually demonstrated that both Judges were actually
correct in their finding. In case 3:12-cv-30087, Judge Boal
issued a recommendation noting that Mr. Cable had no
interest in litigation or identifying infringers and
recommended that all but Doe 1 be severed from the case.
Judge Ponsor agreed with Judge Boal's findings and issued

13

an order accordingly, On July 1, 2013, Mr. Cable finally
responded to all this by dismissing the case voluntarily
and without stating any grounds therefore (Exhibit E).

52.    Essentially half of the judges presiding in these cases
essentially agree that the defendants never had any
intention of litigating their case and that they had no
intention of identifying any real infringers. Thus, the
court has essentially found the defendants to have been in
bad faith.

53.    Regardless of the merits of their claims, the court has
essentially found as fact that the defendants' lawsuits
were filed in bad faith as they were filed with no intent
to actually pursue litigation or infirngers.

54.    A complete review of all 40 of Mr. Cable's lawsuits
(some which include all three defendants) will reveal the
following: 13 were dismissed by the court for reasons
ranging from failure to prosecute to severing all does
after they collected at least one settlement; 26 were
dismissed voluntarily by the defendants, typically after
all but 1 defendant was severed from the case or when
protective orders were issued (Exhibit F, all voluntarily
dismissed cases); and 1 case, to the plaintiff's knowledge,
is still open and simply stagnating.

55.    On July 1, 2013, Mr. Cable voluntarily dismissed an

14

entire case, without prejudice after more than a year had
passed. In this case he was allowed early discovery, no
defendants were severed, permitted 120 days of additional
time to serve and identify defendants and still dismissed
all defendants having obtained no settlements or serving
any of them (Exhibit G).

56.    On 3/28/2013, Mr. Cable voluntarily dismissed an entire
case after only receiving one settlement, again having
served no defendants. (Exhibit H)

57.    Plaintiff is unaware of any legal malpractice lawsuits
against any of the CEG's partnered attorneys. In fact, to
the plaintiff's knowledge, no client who used the CEG's
services has ever brought a legal malpractice lawsuit
against any of the attorneys whom never served a single
defendant nor pursued litigation and have had cases
dismissed for not complying with orders or for failure to
prosecute.

## iii. Plaintiff and other Subscribers were the Defendants' Intended Targets of Their Lawsuits

58.    The court almost unanimously agrees that "The strategy
implemented by Mr. Cable has been to file mass copyright
infringement suits against Doe Defendants known only by
their IP addresses, *alleging that a person associated with*

15

*each IP address illegally downloaded and/or distributed a
pornographic film* using a protocol known as BitTorrent.
Plaintiffs then move for expedited discovery of the
information identifying the defendants by means of Rule 45
subpoenas served on the relevant Internet Service Provider
("ISP"). Armed with that information, plaintiffs send
settlement demand letters to the *subscribers* notifying them
that *they* will be named in the suit if they do not pay a
specified amount."[1] (Emphasis added). In this, the court has
found that the people identified by their IP address are in
fact the defendants and/or at the very least the intended
targets of the defendants' activities.

59.    The plaintiff notes five judges who found or agreed
       that because the complaints sought relief against
       infringers and that the IP addresses only identify
       subscribers, the people identified by their IP's were
       actually non-subscriber witnesses.

60.    The plaintiff also noticed that those same five judges
       also found or agreed that the defendants didn't have any
       intention on identifying any supposed infringers. Judge
       Sorokin found: "Ordinarily, a Plaintiff suing a John Doe

---

[1]      Judge Saylor saying almost the exact same thing: "The strategy implemented by these plaintiffs has been to
file mass copyright infringement lawsuits against "Doe" defendants known only by their IP addresses, alleging that a
person associated with each IP address illegally reproduced a pornographic film using BitTorrent file sharing
technology as part of single "swarm." Plaintiffs then move for expedited discovery of the information identifying the
defendants by means of Rule 45 subpoenas served on the relevant Internet Service Providers ("ISPs")".

16

Defendant would seek narrow discovery ex parte in order to identify the Doe Defendant for purposes of filing a motion to amend the Complaint to name the Doe, followed by service of the Complaint. The Plaintiffs in these cases evidence no interest in such a pursuit. They have not proposed a discovery plan aimed at identifying the infringers they have sued. Rather, the Plaintiffs request that the Court order disclosure of the third-party subscribers' names so that the Plaintiffs might settle or dismiss their cases on an informal basis…Not only have Plaintiffs failed to articulate a discovery plan that would lead to identifying the infringers they have sued, but the Plaintiffs cannot even articulate the specific information they need or require in order to identify the infringers (or, to determine that such identification is not reasonably possible).". Judge Boal also found: "In addition, the Court does not believe that the plaintiffs in these cases have any intention to actually determine the identity of the alleged infringers in order to litigate these cases. See Discount Video Center, Inc., 2012 WL 5464175 at *3. Rather, the plaintiffs appear to be using the federal courts only to obtain identifying information for the subscribers and then attempting to negotiate a quick settlement."

61.     This court also found: "The Court has repeatedly given

17

the Plaintiffs ample opportunity to proceed properly with their cases. Since the Plaintiffs filed these cases, they have repeatedly failed to advance a plan compliant with the straightforward rules of procedure for limited ex parte discovery in order to learn the identities of the persons they have sued." This finding consistent with the 12 cases that were dismissed by the court due to a failure to prosecute or non-compliance with the court's orders

62.    This court also found: "it indeed appears that plaintiff and its counsel have no intention of ever actually naming any defendants and litigating these cases. Chief Magistrate Judge Sorokin observed that Mr. Cable repeatedly said to him and other judges in this District that he intends to litigate the claims he has brought yet he has never served a complaint upon a single individual defendant despite having sued well in excess of one thousand Doe Defendants in this District." this finding is consistent with the 26 cases that were **voluntarily** dismissed with no cause shown therefore.

63.    Plaintiff asks the court to take note that now that the defendants are being sued for their wrongdoing the plaintiff is suddenly a non-party with no standing to sue, however the court should also note that this didn't stop the defendants from extorting money from non-parties.

18

Exhibit I is a compilation of all the settlements the
defendants (any of them) have obtained from subscribers
after the court found that Mr. Cable was wrongfully suing
subscribers of internet services rather than infringers.

64.     Plaintiff also asks the court to note that even though
the court found that the complaint sought relief from
infringers, the defendants specifically alleged that the
plaintiff and other doe defendants were in fact the
defendants saying: "The true names of Defendants are
unknown to the Plaintiff at this time. **Each Defendant** is
known to Plaintiff only by the **Internet Protocol ("IP")
address assigned to that Defendant** by his, her or its
Internet Service Provider on the date and at the time at
which the infringing activity of each Defendant was
observed."(Emphasis added) Page 1, paragraph 7, of
defendants' complaint (Exhibit J).

65.     Interestingly, the findings of Judge Sorokin and Judge
Boal do not conflict with the findings of other judges,
that the defendants sued the people identified by IP
addresses. This is so because, although the court found
that IP addresses only identity subscribers, the court did
also find that the defendants had no intention of pursuing
or identifying infringers. This creates a logical problem;
if the subscribers weren't being sued and if they were also

not suing infringers or attempting uncover who the
infringers were, then who were the defendants in their
lawsuits? This question is answered simply by looking at
who the defendants acquiring settlements from after Judge
Sorokin issued his August 10 finding (IP addresses only
identify subscribers). Judge Boal had found: "Armed with
that [subpoenaed] information, plaintiffs send settlement
demand letters to the **subscribers** notifying them that **they**
will be named in the suit if they do not pay a specified
amount". As shown court has already determined or at the
very least recognized that the defendants' true targets
were the subscribers and **not** infringers.

66.     In case 1:12-cv-10817, Mr. Cable requested a default
and default judgment of Mbiti Pierre. Mr. Cable never
sought to substitute Mbiti Pierre's name for Doe 1. Judge
Stearns noted this and how the default was improper as a
result and vacated the default, however Judge Stearns did
give Mr. Cable an opportunity amend his complaint to name
Mbiti Pierre as a defendant provided that Mr. Cable explain
his basis under Rule 11 for his belief that Mbiti Pierre
was appropriately named as an infringer. Mr. Cable refused
and the case was dismissed with prejudice. The fact that
Mr. Cable refused to explain the basis of his belief that
Mr. Pierre was the proper defendant is both troubling and

revealing in so much that Mr. Cable **was** knowingly targeting subscribers. (Exhibit K)

67. In Case 1:12-cv-10945, Brent. J Nelson submitted a declaration in the form of a motion to dismiss (Exhibit L), in which Mr. Nelson informs the court that he, nor anyone else in his household, owns a computer. He provides a specific reason as to why his wireless internet is and remains unprotected. In lines 15 – 19, Mr. Nelson, a subscriber declares that he contacted Mr. Cable and explained his situation, Mr. Cable told him to "just send him $3,500.00 in exchange for dropping the lawsuit". Mr. Nelson refused and notes that he felt the whole thing was a scam and that "Mr. Cable basically acknowledged that I wouldn't be able to do the things he has accused me of without a computer, but he refused to drop the lawsuit without me providing some proof". Mr. Nelson continues by stating "Obviously I can't prove a negative, and as I said before I don't see how he could ever prove that I could have done this without a computer". Here is a victim's testimony which reveals that even though Mr. Cable knew he would not be able to prove his allegations against Mr. Nelson and yet he refused to dismiss **subscriber** Mr. Nelson as a defendant; unless of course Mr. Nelson paid the $3,500, then dismissal would have been acceptable. Again,

it is revealed that the true targets of the defendants'
(and like parties) scheme is the subscribers.

68.    On November 7, 2012, the court found that the
defendants had no interest in seeking any information that
would lead to the identification of supposed infringers nor
did were they interested in seeking dispositions from
subscribers that would lead to identifying supposed
infringers, the court found the defendants' proposal "-
i.e., that the Court permit the Plaintiffs to subpoena the
names of the subscribers and that the Court then leave it
to the Plaintiffs to figure out the rest pursuant to
informal communications - is unacceptable." (Exhibit M).
Here the court even noted that the defendants' only
interest is in using the court to identify subscribers and
then leave them to deal with their victims as they wish.
When viewed along all the other evidence it is abundantly
clear that the defendants only sought to harass and scare
their victims into paying settlements.

69.    The defendants only used the court as a cheap
alternative to hiring a private investigator to identify
all the subscribers and as a weapon of fear by using the
case numbers attached to each claim to scare people into
thinking that the defendants would actually sue them
regardless of facts if they didn't pay up. The defendants'

22

conduct reveals that the defendants did not want the court
involved with the lawsuits beyond allowing discovery
against subscribers and to keep lawsuits open long enough
for the defendants to profit from their scam.

70.     Plaintiff believes that the settlements acquired each
contain a clause in which the victim must agree that they
were liable to the opposing party. Many courts have
expressed very real concerns over the defendants and other
similar groups coercing settlements out of innocent
subscribers and plaintiff believes that such a clause would
not be enough to satisfy the courts concerns as an innocent
party might accept liability only to make the issue go away
without causing them further harm. We saw this exact
situation during the Salem witch trials, in which parties
who denied allegations of witchcraft were tortured and
executed while parties who confessed were allowed to live,
excommunicated and striped of their property. It is well
known that coercion, extortion, or similar threats do not
yield true confessions and are very often considered
invalid in American law. Plaintiff believes that the
defendants tricked the marks that paid them into such an
agreement by lying to each of them, claiming they were
liable even though the defendants knew that no copyrights
were infringed upon and that the CEG distributed the work

23

themselves.

71.    Also, since the CEG was found uploading (seeding) the
works they were monitoring themselves, there exists a very
real possibility that NSI knew about this and agreed to it,
meaning that, again, copyright infringement did not
actually occur. Plaintiff believes that Mr. Cable is aware
this fact and has personal knowledge of the CEG's
practices. It is very likely that all three defendants knew
the file was being uploaded, which is why they were never
interested in identifying infringers; because there were no
infringers to identify.

72.    Plaintiff finds it both curious and odd how, to the
best of his knowledge, that not a single CEG attorney has
ever had a legal malpractice lawsuit filed against them,
this, coupled with the irrefutable fact that the CEG was
advertising the use of copyrights to obtain "settlements"
before any copying complained of occurred. These facts
imply, both, that NSI and the other defendants knew they
had no legal standing to sue for copyright infringement and
that the real targets of their scheme were the subscribers
since the supposed infringers simply do not exist.

## iv. Not Naming Doe Defendants was the Defendants' Leverage in their Extortion scheme

73.    This court has particularly noted on multiple occasions that the defendants did not name any one in their lawsuits as a defendant. This court has also noted that the defendants didn't have any real intention of doing so anyway.

74.    Not naming a person in a lawsuit does not mean that they have not sued or targeted said person. There are many instances in the 40 lawsuits filed by the defendants in which they have extracted settlements from an unnamed party. The key factor here is that although each party wasn't named they were in fact identified by an IP address, wherefore the defendants did sue/target the people who remained unnamed but were identified by their IP address.

75.    For extortion to work, the extorting party must have some form of leverage over their victim in order to convince their victim it is better to pay than face consequences. In this instance, the defendants used being named in a lawsuit for what some would consider piracy and theft of pornography, both of which can be detrimental to a reputation or even social or economic opportunities. If the defendants named each person they received information from, they would lose any leverage they had in convincing a

25

person to pay thousands of dollars.

76.    If the defendants were to name Doe defendants in their
lawsuits, rather than convincing Does to pay money to make
the issue disappear they would have instead evoked the
wrath of their victims and not fear. The Identified does
would have more to gain from hiring attorneys and/or doing
their own research, filing motions to dismiss and seeking
discovery, and blasting holes in their case so large that
one could sail an oil tanker straight through. However the
defendants prevented this from happening simply never
naming any defendant.

77.    By putting identifying himself as Doe 64, using his
real name, and having provided on motions and on each
envelope his address to where he may be served, the
plaintiff effectively removed the defendants only leverage
against him. The courts, defendants and victims are all too
aware of the embarrassing nature of the film used in their
scheme; mere association with it is enough to drive some
people to settle. The threat of lawsuit is only a part of
the extortion attempt as merely being sued for downloading
a movie isn't nearly as damaging as being accused of
downloading pornography. By facing such public humiliation
rather than waiting for the defendant to begin bombarding
the plaintiff with demand letters, which this court has

26

already determined would be the case, the plaintiff removed the leverage the defendants had against him and thus thwarted their attempted extortion of the plaintiff.

78.    During litigation of the underlying matter the defendants represented the people identified by IP addresses as defendants both unto this court and before Judge Saylor. This fact is reflected in Judge Saylor's order dismissing the case and by the defendant's acquisition of settlements form people identified only by their IP address. The defendants chose not to name the plaintiff as a defendant, presumably because the plaintiff was presenting facts and arguments that were dangerous to their scheme, their choice in not naming the plaintiff was not because doing such was improper, after all they continued extracting settlements from supposed "non-parties", but because naming the plaintiff would mean opening themselves up to discovery and having the merits of their case tested.

79.    Plaintiff believes they especially did not want to name the plaintiff and believed the arguments and evidence presented was dangerous to their scheme, which would certainly explain why they refused to show up to the hearing for the motion making such arguments and presenting such facts.

80.     In case 1:12-cv-10817, Mr. Cable requested a default
    judgment against a Mr. Pierre (mentioned earlier, still
    relevant), the default was vacated and the court gave Mr.
    Cable an opportunity to file an amended complaint naming
    Mr. Pierre as a defendant but only if Mr. Cable could
    provide an explanation under Rule 11 as to why he believed
    Mr. Pierre was an infringer; Mr. Cable simply refused to
    respond to the court's generous offer.

### iv. The CEG is Seeding the File NSI Complained About

81.     Recently, the plaintiff contacted a private
    investigator who allegedly had evidence that the CEG was
    seeding (distributing) the works its clients have sued
    people over.

82.     The private investigator identified two IP addresses as
    the CEG, they are: 96.127.156.98 and 174.36.1.93.

83.     The private investigator, isolating the specific IP
    addresses believed to be the CEG, downloaded over 85% if
    not a complete copy of the file the defendants sued the
    plaintiff over.

84.     Plaintiff believes that both Mr. Cable and NSI is aware
    of the CEG distributing the files of its clients. Plaintiff
    believes that NSI even agreed to allow the CEG to
    distribute its work, in case no torrent existed, in order

28

to produce lawsuits as part of their scam.

85.     Plaintiff believes this is a core reason why the
defendants never sought to name defendants or pursue
litigation; to avoid discovery which would reveal that the
CEG was seeding the very files they used to file the 40
lawsuits filed in this state and the many, many more filed
in other states.

86.     Plaintiff believes this is the reason the defendants
never sought to identify actual infringers. Since NSI
distributed or allowed the distribution of their works, in
order to profit from the lawsuit factory scheme, there are
no infringers to speak of; Plaintiff believes that both NSI
and Mr. Cable are aware of this.

87.     Plaintiff believes that it is possible that all other
torrent of this file that have different hash tags exist as
a result of the CEG seeding its client's works.

88.     Plaintiff believes that NSI has actually caused more
people to copy and distribute their work by having it
secretly seeded by the CEG. In other words, by using the
CEG to act as a lawsuit/settlement factory for them, they
are responsible for each copy complained of and the
potentially many, many more they have not complained of.

89.     During the course of enforcing copyrights, it helps if
you are not also responsible for any copying and

distribution of your own works. Plaintiff believes that all three defendants were fully aware that they lacked any standing to file a lawsuit as nobody committed any wrong doing against them.

### v. Mr. Cable and the CEG are Running a New Copyright Trolling Scam

90.     In a March article by torrentlawyer (Exhibit N), Marvin Cable is described to have been engaging in another copyright trolling scheme, this time only threatening to file lawsuits against victims if they don't pay around $1,750; which is about half the price of the settlements this court has seen.

91.     Mr. Cable and the CEG, after having many of their cases dismissed unfavorably and dropping lawsuits altogether, have begun another scheme sending demand letters to subscribers only this time without the court's oversight or protective orders.

92.     Plaintiff believes that, because the court wouldn't assist the defendants in their scam nor would the court allow them to use the court resources as part of their scam, the defendants are now attempting to use this court to continue threatening and scaring their victims by way of threatening the filing of litigation.

93.    Plaintiff is unaware of any lawsuits that have been
   filed by Mr. Cable after 2012.

94.    Plaintiff was at the court on August 5, 2013, and
   performed a docket search for Marvin Cable. Plaintiff did
   not find any lawsuits filed after 2012 by Mr. Cable.

95.    Plaintiff believes that Mr. Cable is now running the
   CEG's scam outside of the courts to avoid protective orders
   reasonably being placed on subscribers so that he may
   threaten and bully them with impunity.

96.    Plaintiff believes that Mr. Cable is using his station
   as an attorney to give the scheme an appearance of
   legitimacy for the purpose of intimidating marks into
   paying him and the CEG.

## VII. Actionable Causes of Harm

### A. NSI

#### 1. Libel/Defamation of Character

97.    Plaintiff repeats, alleges, and incorporates facts and
   allegations in paragraphs 12 - 96 as fully set forth
   herein.

98.    On May 26, 2012, NSI filed a lawsuit against the
   plaintiff that falsely alleged that the plaintiff violated
   NSI's copyrights.

99.    NSI specifically identified the plaintiff by his IP

address and claimed that the plaintiff was the appropriate
defendant: "The true names of Defendants are unknown to the
Plaintiff at this time. **Each Defendant** is known to
Plaintiff only by the **Internet Protocol ("IP") address
assigned to that Defendant** by his, her or its Internet
Service Provider on the date and at the time at which the
infringing activity of each Defendant was
observed."(Emphasis added) Page 1, paragraph 7, of
defendants' complaint. Plaintiff is informed, believes and
alleges that NSI filed their claim against the plaintiff or
was specifically targeting the plaintiff.

100.   NSI claimed that the plaintiff violated their rights by
downloading a copy of their pornographic work via
bittorrent without their consent. Plaintiff believes and
alleges that NSI knew these same claims were false because
NSI willfully knowingly used their purportedly copyrighted
work to entrap victims for the purpose of filing false
claims to scare their victims into paying settlements.

101.   Plaintiff is informed that because NSI had personal
knowledge of the transaction or copying and took no action
to prevent said copying at the time of the copying, NSI
allowed the transaction to take place and, as a matter of
law, had no legal right to sue or make allegations of
rights violations or illegal activity against the plaintiff

32

or similarly stipulated victims.

102.   Plaintiff is informed, believes, and alleges that NSI
asserted or allowed the assertion of such false claims in
their name for the purpose of personally obtaining undue
profits by way of defrauding, scaring, and humiliating its
victims, such as the plaintiff.

103.   Plaintiff believes that the NSI allowed, consented, or
otherwise participated in the distribution of their works
for the purpose of publishing false and defamatory claims
against unnamed persons with intent to extort money from
them.

104.   Plaintiff believes that NSI is responsible for the
distribution and copying they complained of as they
consented to, allowed, or were reasonably aware of the
CEG's practices.

**105.**   Plaintiff believes that NSI, Mr. Cable, and the CEG all
believe their defamation to be worth $3,500 as this is the
amount demanded by the defendants in order to make the
defamatory claims disappear. By setting a value to their
defamation, plaintiff believes that the defendants have
established the minimum amount recoverable as damages for
defamation.

## 2. Abuse of Process

106.   Plaintiff repeats, alleges, and incorporates facts and

allegations in paragraphs 12 - 105 as fully set forth
herein.

107.   Abuse of Process is defined as: the use of legal
process by illegal, malicious, or perverted means. Examples
include serving (officially giving) a complaint to someone
when it has not actually been filed, just to intimidate an
enemy, filing a false declaration of service (filing a
paper untruthfully stating a lie that someone has
officially given a notice to another person, filing a
lawsuit which has no basis at law, but is intended to get
information, force payment through fear of legal
entanglement or gain an unfair or illegal advantage. Some
people think they are clever by abusing the process this
way. A few unscrupulous lawyers do so intentionally and can
be subject to discipline and punishment. Sometimes a lawyer
will abuse the process accidentally; an honest one will
promptly correct the error and apologize.[2]

108.   Plaintiff is informed and believes that NSI 1) filed a
lawsuit which has no basis at law that was 2) intended to
force payment through the fear of legal entanglement.

109.   Although the plaintiff was never served or named as a
defendant, this court has already found that the defendants
had no real intention of serving or naming anyone as

---

[2]     Dictionary.law.com

34

defendants in their lawsuit scheme.

110.    NSI identified the plaintiff as a defendant in their
complaint, saying: "The true names of Defendants are
unknown to the Plaintiff at this time. **Each Defendant is
known to Plaintiff only by the Internet Protocol ("IP")
address assigned to that Defendant by his, her or its
Internet Service Provider on the date and at the time at
which the infringing activity of each Defendant was
observed.**"(Emphasis added) Page 1, paragraph 7, of
defendants' complaint. Comcast, after receiving the
defendants' subpoena, informed the plaintiff that the
defendants identified him as Doe 64 in lawsuit 1:12-cv-
10944.

111.    On July 30, 2012, Judge Sorokin found that an IP
address will not positively identify infringers, it only
identifies subscribers. Judge Sorokin also found that
telling subscribers that they have been sued when the
defendants were, supposedly, seeking relief from infringers
was inappropriate. Judge Sorokin quashed all subpoenas
before him and gave Mr. Cable an opportunity to correct the
matter since subscribers were more likely to be non-party
witnesses than infirngers. At the time, Judge Sorokin's
ruling affected three lawsuits. Defendants, being aware of
this ruling, made no such effort to correct this matter

before Judge Saylor and instead continued to pursue

settlements from subscribers in all other lawsuits.

112.    Plaintiff is informed and believes that NSI never

sought to identify any infringers because no one infringed

their copyrights.

113.    Plaintiff is informed and believes that NSI used false

allegations of infringement to mask the fact that

subscribers were the only intended targets.

114.    Plaintiff is informed and believes that NSI is and was

unable to show the court why under Rule 11 they believed

anyone they sought information from was an infringer.

115.    On May 26, 2012, NSI filed a lawsuit asserting false

allegations against the plaintiff for the purpose of

deceiving the plaintiff into paying a settlement of $3,500.

116.    Plaintiff is informed, believes, and alleges that NSI's

purpose for filing a lawsuit was solely to give their

threat "teeth".

117.    Plaintiff is informed, believes, and alleges that NSI

filed the lawsuit to deliberately create the illusion that

they had legal standing to pursue the subscribers for

copyright infringement.

118.    Plaintiff believes and alleges that NSI filed their

lawsuits with full knowledge that no one infringed on their

copyrights.

119.    Plaintiff is informed, believes, and alleges that NSI
        filed the lawsuit to deliberately induce fear, stress,
        emotional duress, and psychological duress in order to
        procure "settlements" from their victims.

120.    Plaintiff is informed, believes, and alleges that NSI
        improperly used the courts and the legal system in general
        as a sort of weapon to abuse and harass the plaintiff and
        similarly stipulated victims.

121.    Plaintiff is informed, believes, and alleges that NSI
        had no intention of following through with their lawsuit
        for reasons such as avoiding discovery because NSI knew
        that their claims were false and without merit.

122.    Plaintiff is informed, believes, and alleges that NSI
        had no intention of following through with their lawsuit
        for reasons such as avoiding discovery to avoid exposure
        for partaking in a "what is essentially an extortion
        scheme".

123.    Plaintiff believes, and alleges that NSI did not want
        to purse litigation in order to avoid discovery that would
        reveal their consent, permission, or otherwise
        participation in the distribution of the work they filed
        lawsuits over.

124.    Plaintiff is currently aware of three lawsuits filed by
        NSI: one dismissed after being severed and the court noted

37

that a settlement with subscriber Doe 1 had been reached
months prior, another dismissed voluntarily after all Does
except Doe 1 were severed, and another dismissed by the
court when NSI failed to respond to an order to show cause
as to why the last defendant should not be dismissed.

125. Plaintiff is informed and believes that, to date, NSI
has filed seven nearly identical lawsuits across the
country and has not once ever named a defendant or having
once served a defendant. In each lawsuit, NSI only ever
sought to obtain settlements form subscribers. This is a
fact that cannot be challenged as it is a matter of court
record.

126. Plaintiff believes that because NSI allowed their work
to be distributed for the purpose of copying so that they
could file lawsuits against those they allowed to have
access their work via torrents demonstrates very clear bad
faith since NSI lacked any standing to file lawsuits in the
first place.

127. Plaintiff believes the defendants will assert that the
plaintiff was never a target of the defendants' scheme;
however this is directly opposed by the settlements
defendants have acquired from other similarly stipulated
"non-parties".

128. In summary: Plaintiff is informed, believes, and

38

alleges: 1) that the plaintiff was identified as a defendant by NSI or was an intended target of the defendants' scheme; 2) that NSI initiated bad faith litigation against the plaintiff; 3) that NSI's intent was to intimidate the plaintiff into paying a settlement; 4) that NSI never intended to pursue the litigation it filed; 5) that NSI never intended to pursue infringers; 6) that NSI had no intention of naming anyone as a defendant.

**129.** Plaintiff is informed and believes that the bare facts alone are sufficient in establishing and proving abuse of process by NSI.

### 3. Malicious Prosecution

130. Plaintiff repeats, alleges, and incorporates facts and allegations in paragraphs 12 – 129 as fully set forth herein.

131. Plaintiff is informed and believes that to maintain and To win a suit for malicious prosecution, the plaintiff must prove four elements: (1) that the original case was terminated in favor of the plaintiff, (2) that the defendant played an active role in the original case, (3) that the defendant did not have probable cause or reasonable grounds to support the original case, and (4) that the defendant initiated or continued the initial case with an improper purpose.

132.    Plaintiff is informed, believes, and alleges that based
    on his IP address he was identified by the defendants as
    Doe 64.

133.    Defendants' complaint claimed that "Each **Defendant** is
    known to Plaintiff only by the **Internet Protocol ("IP")**
    **address assigned** to **that Defendant**..." (Emphasis added).
    Whereby the plaintiff, identified as Doe 64, was the
    defendant regardless of subscriber/infringer status.
    Defendants made no effort to change or other wise correct
    this in most of their lawsuits. This fact is irrefutable
    and a matter of known public record.

134.    Defendants have pursued defaults against known
    subscribers without being able to explain under Rule 11 why
    they believed the subscriber was an infringer. This fact is
    irrefutable and a matter of known public record.

135.    In Case 1:12-cv-10945, Brent. J Nelson filed a motion
    to dismiss which contended that he was not liable, that Mr.
    Cable demanded $3,500 to drop the lawsuit, that Mr. Cable
    acknowledged that Mr. Nelson (the subscriber) could not
    have infringed on his clients rights, and that Mr. Cable
    refused to dismiss the allegations against him regardless
    of the fact. These claims were never challenged by Mr.
    Cable. This is irrefutable and a matter of known public
    record.

136.    It is irrefutable as a matter of known public record
    that the plaintiff was the defendants intended target, that
    the plaintiff was identified as the defendant Doe 64 in the
    underlying lawsuit, and that the defendants had no
    intention of identifying true infringers or naming
    defendants.

137.    On May 26, 2012, the defendants initiated litigation
    against the plaintiff, identifying him only by his IP
    address as Doe 64. Plaintiff clarifies that the IP address
    is his because he is the one only subscriber of shared
    internet in his household.

138.    Plaintiff appeared before the court on September 13 for
    a hearing on motions filed by the plaintiff, the defendants
    failed to appear. Plaintiff is informed and believes having
    to appear for a motion hearing satisfies the minimal
    requirement for qualifying the case as prosecution. Again,
    the plaintiff appeared before the court, the defendants
    refused to do so.

139.    Plaintiff is informed, believes, and alleges that
    because NSI's copyrights were not infringed by way of NSI
    distributing, allowing the distribution of, or otherwise
    allowing or enabling the transactions of copying and
    distributing of their works the defendants had no
    reasonable grounds to support their case.

41

140. Plaintiff is informed, believes, and alleges that the lawsuit against the plaintiff was without probable cause due to NSI's personal knowledge that using the CEG's monetization service would enable or otherwise allow people to copy or distribute their work. NSI should have reasonably been aware of this since they chose to "Establish a new revenue source" that involved secretly watching people copy their works via known uploaded torrents that were uploaded by the CEG.

141. Plaintiff is informed, believes, and alleges that each defendant played an active role in the underlying case. NSI played the role of the "plaintiff", allowing their name and their works to be used in the creation of the underlying original lawsuit.

142. Plaintiff is informed and believes that the original case was dismissed in his favor. Judge Saylor's order: "the claims against all of the "Doe" defendants are severed and all claims, except those against "Doe #1," are hereby DISMISSED without prejudice." Since the claims against the plaintiff were dismissed by this court, the lawsuit was terminated in favor of the plaintiff.

143. Plaintiff is informed and believes that on December 12, 2012, Judge Saylor issued an order terminating the original case altogether (Exhibit O). The case was terminated and

42

this is irrefutable and a matter of public record.

144.   Plaintiff was never held liable to the defendant,
wherefore, the case was terminated in favor of the
plaintiff.

145.   Defendants are yet to file any action against the
plaintiff, or any other dismissed Doe for that matter,
nearly a year after the plaintiff was dismissed. Plaintiff
is informed and believes that the defendants have abandoned
their claims against the plaintiff.

146.   Plaintiff believes that the bare facts provided herein
are sufficient in establishing and proving malicious
prosecution by defendant NSI.

#### 3. Attempted Extortion

147.   Plaintiff repeats, alleges, and incorporates facts and
allegations in paragraphs 12 – 146 as fully set forth
herein.

148.   Plaintiff is informed, believes, and alleges that NSI
conspired to and followed through with, knowingly filing a
frivolous lawsuit, with no intention of pursuing
litigation, for the purpose of extracting unjust and undue
settlements from the plaintiff and similarly stipulated
victims.

149.   Plaintiff believes and alleges that NSI took the

43

initial steps of their extortion scheme by creating and

filing a frivolous lawsuit and deceptively requesting

discovery, but were blocked by plaintiff's actions of

filing a motion to quash/dismiss and by filing a counter

claim.

150.    Plaintiff is informed, believes, and alleges that NSI

has profited from extorting money from Doe defendants and

intended to and attempted to do the same to the plaintiff.

151.    Plaintiff is informed, believes, and alleges that NSI

used the embarrassing nature of pornography and its victims

potential sexual interests to humiliate its victims into

settlements by using the threat of public exposure and

scrutiny via a public lawsuit. Plaintiff is informed,

believes and alleges that NSI used the threat of a

potentially costly lawsuit to scare the plaintiff and its

other victims into paying "settlements"

152.    Plaintiff is informed, believes, and alleges that NSI

willfully and knowingly acted in ways or partook in actions

that were intended to cause emotional duress and

humiliation, with reckless disregard to the plaintiff and

their other victims, for the purpose of coercing them to

pay money to avoid public exposure.

153.    Plaintiff believes that by representing himself in the

underlying matter, he removed NSI's leverage over him and

diminishing any interest NSI had in pursuing or harassing
the plaintiff.

154. Plaintiff believes and alleges that by representing
himself under his true name and engaging the defendants in
litigation, the defendants lost any leverage they had over
the plaintiff and any interest in pursuing the plaintiff as
the plaintiff clearly showed them a willingness to take the
fight to them during the course of the original case.

## 4. Racketeering

155. Plaintiff repeats, alleges, and incorporates facts and
allegations in paragraphs 12 - 154 as fully set forth
herein.

156. Plaintiff is informed and believes that under current
racketeering laws the filing of fraudulent and malicious
lawsuits in order to scare people into paying "settlements"
is an act of racketeering.

157. Plaintiff is informed and believes that racketeering is
illegal under 18 USC § 1961 et. Seq.

158. Plaintiff is informed, believes, and alleges that NSI
willfully and knowingly, under the guidance of capable
legal council, filed a fraudulent lawsuit with malicious
intent to scare people, such as the plaintiff, into paying
them money to avoid being sued.

159.   Plaintiff believes and alleges that the NSI willfully
and knowingly, having allowed the CEG to distribute their
work in the form of a torrent, filed a lawsuit with
containing false allegations for the purpose of extorting
settlements from their victims.

160.   Plaintiff is informed, believes and alleges that The
CEG's monetization service is designed to provide a
copyright holder with a means to avoid civil or criminal
liability for a wrongful act by intentionally putting them-
self in a position where they will be unaware of facts that
would render him liable. Plaintiff is informed, believes,
and alleges that the CEG does this in an attempt to create
the technical circumstances required to have a legitimate
copyright infringement claim without the need of a
legitimate copyright infringement claim so they can create
fraudulent lawsuits that their partnered attorneys use to
attempt to extort money from their victims, such as the
plaintiff.

161.   Plaintiff has recently been made aware of the fact that
his litigation expenses are not able to be considered
damages under RICO because, and only because, litigation
was not the intention of the action filed by the
defendants. However because the defendants' intentional
infliction of harm against the plaintiff, plaintiff

46

believes he may be entitled to injunctive relief.

162. Plaintiff believes and alleges that the settlements victims agreed to contain a clause in which they agree that they are liable to the defendants. Plaintiff believes this is done purposefully to make it more difficult for paying victims to bring RICO charges or allegations once they realize what actually happened. Plaintiff requests that the court allow the RICO allegations to proceed on behalf of the other Does. Plaintiff has already set forth allegations sufficient for RICO and has requested a form of relief that would satisfy the need for hundreds of Does to file separate RICO claims against the defendants.

**5. Copyright Trolling (for-profit Copyright Abuse)**

163. Plaintiff repeats, alleges, and incorporates facts and allegations in paragraphs 12 - 162 as fully set forth herein.

164. Copyright trolling is a form of copyright abuse in which the copyright holder seeks to use their copyright of a work to obtain personal profits, usually via phony lawsuits. The only way to turn copyright ownership into something profitable is to knowingly create or allow transactions that cause a copyrighted work to be copied and/or to willfully fail or refuse to prevent the copying

47

of said work to create a circumstance that creates the
illusion of copyright infringement.

165.    Copyright trolling as a cause for harm is directed at
the specific intent of a copyright holder to use their
copyrights to victimize others for personal gains.

166.    Plaintiff is informed, believes, and alleges that NSI
knowingly used a service that enabled or allowed people to
copy their work for the purpose of unjustly suing people.

167.    Plaintiff is informed, believes, and alleges that NSI
knowingly used a service that would distribute and cause to
be distributed and copied their work for the purpose of
unjustly suing people.

168.    Plaintiff is informed, believes, and alleges that NSI
has used this service at least four times in the past
(3:10-cv-05863, 5:10-cv-05864, 8:12-cv-01291, and 3:2011-
cv-02770), whereby plaintiff is informed, believes, and
alleges that NSI had personal knowledge that the use of the
CEG's monetization service would result in people copying
and distributing the work they had the CEG monitor.

169.    Plaintiff is informed, believes, and alleges that NSI
used the CEG's monetization service to profit via lawsuit
from copying, which had not yet happened, of a torrent file
that may or may not have existed at the time of contracting
the CEG. Plaintiff is informed, believes, and alleges that

48

NSI knew prior to using the service that the only way to profit from its use was to enable or otherwise allow the general public to copy and/or distribute their work.

170. Plaintiff is informed, believes, and alleges that NSI willingly used a service that they personally knew would not prevent any copying or distribution of their work.

171. Plaintiff is informed, believes, and alleges that NSI willingly used a service that they personally knew would distribute their work to be copied and distributed further via torrent.

172. Plaintiff is informed, believes, and alleges that NSI willfully and knowingly abused its' supposed copyright and copyright law for the purpose of harassing, extorting money from, and to otherwise cause general harm to the plaintiff and similarly stipulated victims.

173. Plaintiff believes, under Rule 11, that the allegation of Copyright Trolling is warranted by a non-frivolous argument for the creation of new doctrine. Currently, the only countermeasures to false copyright infringement claims are the copyright misuse doctrine and title 17, section 512(f) (DMCA misrepresentations). However the original lawsuit does not arise out of the DMCA the plaintiff is unable to assert misrepresentation allegations nor did the original lawsuit never reached and was never intended to

49

reach the point of litigation at which the affirmative
defense of copyright misuse may be raised.

174. As of current copyright law is without any
countermeasures that can address copyright
settlement/litigation factories. This is because lawsuits
never reach a point of litigation to which copyright misuse
can be raised as an affirmative defense, particularly since
the parties bringing the suit never intend to actually
follow through with the suit or name anyone; conveniently
it is this that also enables parties like the defendants to
circumvent copyright misuse claims. Also, there currently
is no countermeasure to the abuse or misuse of statutory
damages, which are a big factor into what scares people
into paying settlements.

175. A copyright trolling doctrine will create a
countermeasure that specifically combats these illegitimate
settlement/lawsuit factories first by making it no longer
worth while to make empty threats using the statutory
damages to provide a fear factor and next by assuring that
copyright infringement lawsuit filed will be pursued.

## 6. Intentional Infliction of Harm

176. Plaintiff repeats, alleges, and incorporates facts and
allegations in paragraphs 12 - 175 as fully set forth

50

herein.

177.    Plaintiff is informed, believes, and alleges that NSI
file lawsuits against does for the purpose of causing undue
stress, emotional harm, and psychological harm to place
Does under duress so they could more easily extort
settlements from the defendants.

178.    Plaintiff is informed, believes, and alleges that NSI
specifically used the embarrassing nature of their works to
cause emotional stress, feelings of embarrassment, and
undue stress to place Does under duress so they could more
easily extort settlements.

179.    Plaintiff is informed, believes, and alleges that NSI
intentionally inflicted emotional and psychological harm on
all Does, including the plaintiff, with reckless disregard
to any conditions anyone was suffering, in order to more
easily pressure them into paying settlements.

180.    Plaintiff suffered emotional and psychological pains as
well as undue stress and anxiety as a result of the
defendants' intentional infliction of harm upon him.

**7. Violations of A.M.G.L. 93A: Unfair Practices**

181.    Plaintiff repeats, alleges, and incorporates facts and
allegations in paragraphs 12 - 180 as fully set forth
herein.

51

182.  Plaintiff is informed, believes, and alleges that
A.M.G.L. Chapter 93A protects him from unfair and deceptive
business practices.

183.  Plaintiff believes and alleges that at all relevant
times defendants engaged in unfair and deceptive conduct
within the meaning of Chapter 93A. Defendants filed and
manufactured their lawsuit knowing that NSI's copyrights
were no infringed; that they were targeting subscribers and
not infringers; that they did not intend to actually
litigate their cases.

184.  Plaintiff is informed, believes, and alleges that the
defendants filed their suit as part of the overall
copyright scheme, with the ulterior motive of forcing
"settlements" from plaintiff and other Does. The defendants
then used their complaint as leverage against the
plaintiff's and other does' ignorance as to their potential
defenses.

185.  Plaintiff is informed, believes, and alleges that using
copyrights to "Establish a new revenue source" by way
filing phony lawsuits is an unfair and deceptive practice.

186.  Plaintiff is informed, believes, and alleges that NSI
used their copyrights to engage in a business practice that
involves allowing the distribution of their work for the
purpose of generating revenue by way of a copyright

52

infringement lawsuit scam that is directed at extorting
settlements from unsuspecting subscribers under the guise
of legitimate legal actions.

187.    Plaintiff is informed, believes, and alleges The
Defendants' unfair, unlawful, and deceptive practices
occurred in the course of the Defendants' Copyright Scheme
and the challenged practices directly caused actual damages
and injury to plaintiff and other Does.

188.    Plaintiff is informed, believes, and alleges that NSI
willfully and knowingly and secretly allowed their works to
be copied and distributed via torrent so that they and
their co-conspirators could profit from a knew business
model/practice that is formally recognized as copyright
trolling.

189.    Plaintiff is informed, believes, and alleges that each
lawsuit that was filed is part of the overall copyright
scheme. Plaintiff is also informed,, believes and alleges
that the copyright scheme is a business practice and not a
lawful petition for relief.

190.    Plaintiff believes and alleges that he is entitled to
treble damages resulting form the defendants unfair and
deceptive practices.

## B. CEG

### 1. Inducement/barratry

191.   Plaintiff repeats, alleges, and incorporates facts and
   allegations in paragraphs 12 - 190 as fully set forth
   herein.

192.   Plaintiff is informed, believes, and alleges that the
   CEG openly advertised (Exhibit P), and now more discretely
   advertises, settlement based litigation for "copyright
   infringement".

193.   Plaintiff is informed, believes, and alleges that the
   CEG achieves its' settlement directed service by offering
   to its clients a service that secretly monitors any copying
   or specific torrent files without preventing said copying.

194.   Plaintiff is informed, believes, and alleges that the
   CEG's clients are fully aware of the secret monitoring and
   that copying will not be prevented.

195.   Plaintiff believes and alleges that the CEG's co-
   conspirators are aware of the CEG distributing the works
   via torrent.

196.   Plaintiff is informed, believes, and alleges that the
   CEG's advertising of a settlement based "monetization"
   service directed at copying that has yet to happen that is
   also at no cost to the copyright holder induces and induced
   copyright holders to abuse their copyrights for personal

54

gains.

197. Plaintiff is informed, believes, and alleges that the CEG willfully and knowingly seeks to profit from the inducement of false litigation and a form copyright abuse known as copyright trolling.

198. Plaintiff is informed, believes, and alleges that the CEG willfully induces its' clients to engage in willful conduct that is intended induce fear, stress, emotional duress, and psychological duress to more easily procure settlements from its' clients' victims.

199. Plaintiff is informed, believes, and alleges that the CEG knows and knew that their service was not geared towards copyright protection, but rather a way to turn downloading torrents into something profitable (Exhibit Q).

200. Plaintiff is informed, believes, and alleges that the CEG never intends for any of its advertised settlement-driven "litigation" to reach fruition, meaning that they specifically desire to have each case avoid going to trial to avoid being exposed the fact that their advertised lawsuits are groundless.

201. Plaintiff believes, under Rule 11, that the allegation of barratry is warranted by a non-frivolous argument for the reversal of existing rulings that hold barratry as no longer a valid allegation. There may have been a time in

state law when barratry was no longer a valid claim,
however companies like the CEG that advertise the use of
phony lawsuits to generate profits have given cause to
bring back barratry. And how does the CEG know the lawsuits
it sells are phony? Simple, they are the ones uploading
their client's works to begin with; they manufacture the
lawsuit for their clients.

## 2. Civil Conspiracy

202.    Plaintiff repeats, alleges, and incorporates facts and
    allegations in paragraphs 12 - 201 as fully set forth
    herein.

203.    Plaintiff is informed, believes, and alleges that the
    CEG directly profits from and helps to create the false and
    malicious lawsuits that are filed against their client's
    victims.

204.    Plaintiff is informed, believes, and alleges that the
    CEG provided evidence and an "expert's" declaration while
    deliberately avoiding informing courts of their personal
    and fiscal interests in the lawsuits they sold to their
    clients.

205.    Plaintiff is informed, believes, and alleges that the
    CEG secretly monitors torrents to entrap victims, such as
    the plaintiff, and aids in the extortion of money from

them, at the request of their clients.

206.   Plaintiff believes and alleges that the CEG is the
   original seeder of the torrent files they monitor and that
   their clients file lawsuits over.

207.   Plaintiff is informed, believes, and alleges that the
   CEG provides their clients with the legal counsel who files
   the frivolous and malicious lawsuits against its' clients'
   the plaintiff and other victims.

208.   Plaintiff is informed, believes, and alleges that the
   CEG conspires with its clients to create the false lawsuits
   it uses to obtain profits for the CEG, their client, and
   their respective attorney partner.

209.   Plaintiff is informed, believes and alleges that the
   CEG's primary objective is to act as a lawsuit/settlement
   factory by taking advantage of unwitting torrent users via
   distribution software that is intended to be difficult to
   track.

### 3. Copyright Trolling

210.   Plaintiff repeats, alleges, and incorporates facts and
   allegations in paragraphs 12 – 209 as fully set forth
   herein.

211.   Although the CEG is not the copyright holder, by
   conspiring to and aiding in the act of copyright trolling,

57

the CEG has engaged in the act of copyright trolling
vicariously.

212. Plaintiff is informed, believes, and alleges that the
CEG's monetization service is the service that NSI
knowingly used that enabled or allowed people to copy their
clients' work for the purpose of suing people, such as the
plaintiff.

213. Plaintiff is informed, believes, and alleges that the
CEG enables copyright holders to abuse their copyrights by
entering into contracts to monitor a specific torrent file
of their clients' works for the purpose of suing people who
haven't yet copied their clients' works.

214. Plaintiff believes and alleges that the CEG enables
copyright holders to abuse their copyrights by uploading
their clients' works as torrents for their clients and then
tracking the very torrents they created.

215. Plaintiff believes and alleges that the CEG partakes
and enables copyright trolling by advertising and providing
a third-party, secret monitoring service that allows
copyright holders to willfully turn a blind eye to any
copying of their works for the purpose of suing
unsuspecting victims using false claims of infringement.

216. Plaintiff is informed, believes, and alleges that the
CEG knows it could not profit from any copying that is

prevented and thus has specifically designed their service
to not prevent copying of works and to encourage copyright
holders to also not prevent the copying of their works.

217.    Plaintiff is informed, believes, and alleges that the
CEG willfully and knowingly encouraged NSI to willfully and
knowingly abuse their supposed copyrights and copyright law
for the purpose of harassing, extorting money from, and to
otherwise cause general harm to the plaintiff and similarly
stipulated victims.

218.    Plaintiff believes, under Rule 11, that the allegation
of Copyright Trolling is warranted by a non-frivolous
argument for the creation of new doctrine. Currently, the
only countermeasures to false copyright infringement claims
are the copyright misuse doctrine and title 17, section
512(f) (DMCA misrepresentations). However the original
lawsuit does not arise out of the DMCA the plaintiff is
unable to assert misrepresentation allegations nor did the
original lawsuit never reached and was never intended to
reach the point of litigation at which the affirmative
defense of copyright misuse may be raised. Furthermore, the
DMCA and copyright misuse doctrines have no affect on
parties who manufacture fake copyright infringement
lawsuits or copyright lawsuit scams. Although they are not
the content owner, they depend on the content owner's

consent to manufacture these lawsuits and scams that are
aimed at using copyrights for unjust enrichment.

219.    Plaintiff believes there is good cause to expand
possible copyright trolling doctrine to also include
companies and organizations that profit from, manufacture,
or otherwise encourage the use of copyright scams for
"clients". Plaintiff believes that if not for the CEG's
advertised scam, this court would not have been flooded
with 40 lawsuits that literally went no where, where no
justice was sought. The CEG is directly responsible for the
scam they created and used by NSI.

## 4. Racketeering

220.    Plaintiff repeats, alleges, and incorporates facts and
allegations in paragraphs 12 - 219 as fully set forth
herein.

221.    Plaintiff is informed and believes that under current
racketeering laws the filing of fraudulent and malicious
lawsuits in order to scare people into paying "settlements"
is an act of racketeering.

222.    Plaintiff is informed and believes that racketeering is
illegal under 18 USC § 1961 et. Seq. Plaintiff is informed,
believes, and alleges that CEG is the ringleader and
mastermind behind this scheme.

223.    Plaintiff believes and alleges that the CEG is the
   ringleader of the massive copyright lawsuit scam that has
   plagued this court.

224.    Plaintiff is informed, believes and alleges that the
   CEG deliberately created a service, which includes
   providing capable legal counsel, to induce copyright
   holders to commit acts of extortion for the CEG's personal
   gain. Although it is the right holder who is essentially
   making the demands for money, the demands originate from
   the CEG's advertised scheme and are carried out by the CEG
   and their partnered attorneys.

225.    Plaintiff believes and alleges that the CEG's scheme is
   designed to enable them to place any blame of illegal
   activity solely on the copyright holder. However, Plaintiff
   believes and alleges that NSI and other similar "clients"
   could not have carried out these scam lawsuits, against the
   plaintiff and other victims, if not for the services and
   attorneys the CEG knowingly provided.

226.    Plaintiff has recently been made aware of the fact that
   his litigation expenses are not able to be considered
   damages under RICO because, and only because, litigation
   was not the intention of the action filed by the
   defendants. However because the defendants' intentional
   infliction of harm against the plaintiff, plaintiff

believes he may be entitled to injunctive relief.

227.    Plaintiff believes and alleges that the settlements
    victims agreed to contain a clause in which they agree that
    they are liable to the defendants. Plaintiff believes this
    is done purposefully to make it more difficult for paying
    victims to bring RICO charges or allegations once they
    realize what actually happened. Plaintiff requests that the
    court allow the RICO allegations to proceed on behalf of
    the other Does. Plaintiff has already set forth allegations
    sufficient for RICO and has requested a form of relief that
    would satisfy the need for hundreds of Does to file
    separate RICO claims against the defendants.

## 5. Fraudulent Misrepresentation

228.    Plaintiff repeats, alleges, and incorporates facts and
    allegations in paragraphs 12 - 227 as fully set forth
    herein.

229.    Plaintiff believes and alleges that the CEG is not
    licensed to engage in private investigation as required by
    California state law.

230.    Plaintiff is informed, believes, and alleges that the
    CEG deliberately misrepresented itself to the courts as an
    uninterested party by refusing to inform the courts of
    their personal interests.

231.    Plaintiff believes and alleges that the CEG and John
       Nicolini are not trained in copyright law and deliberately
       misrepresented the copying complained of as "infringements"
       to further their personal goals and agenda in courts all
       across the country. Plaintiff believes that by willfully
       and knowingly misrepresenting each victim's, such as the
       plaintiff, transaction as an act of infringement, the CEG
       intended to aid their clients and partnered attorneys into
       deceiving the courts to allow them early discovery for
       their own personal gain.

232.    Plaintiff believes that if the CEG had informed the
       court that they were uploading and monitoring their
       clients' works at the request of their clients the court
       would have thrown out all 40 of the lawsuits filed by Mr.
       Cable.

233.    Plaintiff believes that if the CEG had represented
       themselves and their attorneys before the courts honestly,
       not a single unbiased judge would have allowed early
       discovery for the identities of the people the CEG was
       interested in having sued.

234.    Plaintiff believes and alleges that the CEG willfully
       and deceptively misrepresented itself as an uninterested
       party to assist its' clients in harassing and extorting
       money from the plaintiff and their other victims.

**235.** Although typically fraudulent misrepresentation is used in contract law or law surrounding agreements, Plaintiff believes that there is good cause under Rule 11 to extend allegations of fraudulent misrepresentation the CEG in this action because, even though there was no agreement made between the CEG and the plaintiff, the plaintiff was still damaged as a result of the CEG's misrepresentation to the court.

### 6. Violations of A.M.G.L. 93A Unfair Practices

236.    Plaintiff repeats, alleges, and incorporates facts and allegations in paragraphs 12 - 235 as fully set forth herein.

237.    Plaintiff is informed, believes, and alleges that A.M.G.L. Chapter 93A protects him from unfair and deceptive business practices.

238.    Plaintiff believes and alleges that at all relevant times defendants engaged in unfair and deceptive conduct within the meaning of Chapter 93A. Defendants filed and manufactured their lawsuit knowing that NSI's copyrights were no infringed; that they were targeting subscribers and not infringers; that they did not intend to actually litigate their cases.

239.    Plaintiff is informed, believes, and alleges that the defendants filed their suit as part of the overall

64

copyright scheme, with the ulterior motive of forcing
"settlements" from plaintiff and other Does. The defendants
then used their complaint as leverage against the
plaintiff's and other does' ignorance as to their potential
defenses.

240. Plaintiff is informed, believes, and alleges that this
    particular copyright scheme is the CEG's brainchild.

241. Plaintiff is informed, believes, and alleges that using
    copyrights to "Establish a new revenue source" by way
    filing phony lawsuits is an unfair and deceptive practice.

242. Plaintiff is informed, believes, and alleges that the
    CEG used NSI's copyrights to engage in a business practice
    that involves allowing the distribution of their work for
    the purpose of generating revenue by way of a copyright
    infringement lawsuit scam that is directed at extorting
    settlements from unsuspecting subscribers under the guise
    of legitimate legal actions.

243. Plaintiff is informed, believes, and alleges The
    Defendants' unfair, unlawful, and deceptive practices
    occurred in the course of the Defendants' Copyright Scheme
    and the challenged practices directly caused actual damages
    and injury to plaintiff and other Does.

244. Plaintiff is informed, believes, and alleges that the
    CEG's monetization service is nothing more than a lawsuit

factory in which the CEG manufactures lawsuits for its
clients to file, using the CEG's attorneys, so that each
party may profit from the manufactures lawsuit.

245. Plaintiff is informed, believes, and alleges that each
lawsuit is premeditated and schemed before any "tracking"
has started and that all three involved parties are aware
that they are allowing people to copy and distribute the
works of the "client" for the purpose of manufacturing
settlement driven lawsuits.

246. Plaintiff is informed, believes, and alleges that each
lawsuit that was filed is part of the overall copyright
scheme. Plaintiff is also informed,, believes and alleges
that the copyright scheme is a business practice and not a
lawful petition for relief.

247. Plaintiff believes and alleges that he is entitled to
treble damages resulting form the defendants unfair and
deceptive practices.

## C. Attorney Marvin Cable

### 1. General Allegations

248. Plaintiff repeats, alleges, and incorporates facts and
allegations in paragraphs 12 – 247 as fully set forth
herein.

249. Plaintiff is informed, believes, and alleges that

66

Attorney Marvin Cable is a partner of the CEG (Exhibit R).

250.    Plaintiff believes and alleges that based on Mr.
Cable's professional experience, he knows and knew, prior
to filing any of the CEG originating lawsuits he filed
against the plaintiff and similarly stipulated victims,
that copyright infringement did not occur.

251.    Plaintiff is informed, believes, and alleges that on
July 30, 2012, before the honorable Judge Leo Sorokin, Mr.
Cable conceded that suing subscribers of an internet
service without knowing if they were infringers was in bad
faith. Plaintiff is informed, believes, and alleges that
Mr. Cable only threatened to sue subscribers of an internet
service and, based on his professional experience, knew
that none of them committed copyright infringement.

252.    Plaintiff is informed, believes, and alleges that even
though Mr. Cable conceded that pursuing subscribers was
wrong it didn't stop him from doing so. Plaintiff is
informed, believes, and alleges that Mr. Cable continued to
coerce settlements from subscribers after that hearing with
utter disregard for the court's findings.

253.    Plaintiff is informed, believes, and alleges that Mr.
Cable never attempted to name anyone as a defendant.
Plaintiff is informed, believes and alleges that Mr. Cable
is unable to show under rule 11 why he believes anyone is

an infringer. Plaintiff believes and alleges this is
because Mr. Cable reasonably knew that the CEG was
distributing his clients work for their client.

254. Plaintiff is informed, believes, and alleges that Mr.
Cable knowingly filed all the CEG lawsuits for the purpose
of extorting money for his, the CEG's and their co-
conspirators' (clients') personal gain.

255. Plaintiff is informed, believes, and alleges that not
one of Mr. Cable's 40 copyright lawsuits that have
concluded by obtaining justice for his clients.

256. Plaintiff is informed, believes, and alleges that this
court found as fact that Mr. Cable had no intention of
litigation his cases.

257. Plaintiff is informed, believes, and alleges that Mr.
Cable voluntarily dismissed 26 of his lawsuits largely
because doe defendants were severed or protective orders
were put in place. Plaintiff is informed, believes, and
alleges 13 of his lawsuits were dismissed by this court,
mostly for failure to prosecute or failure to comply with
the court's orders.

258. Plaintiff is informed, believes, and alleges that Mr.
Cable has already been sanctioned by Judge Boal for failure
to comply with one of the court's orders.

259. Plaintiff is informed, believes, and alleges that this

court found as fact that Mr. Cable did not have any
intention of pursuing infringers.

260.    Plaintiff is informed, believes, and alleges that MR.
Cable willfully  engage conduct that is and was intended
induce fear, stress, emotional duress, and psychological
duress to more easily procure "settlements" from his and
his clients' victims.

261.    Plaintiff is informed, believes, and alleges that the
cookie-cutter complaint was written by Mr. Cable.
Considering the vague and identical nature of the
complaints, plaintiff believes and alleges that Mr. Cable
drafted the complaints based on the CEG's processes as
opposed to any specific facts relevant to each case.
Plaintiff believes and alleges that Mr. Cable deliberately
crafted each complaint to hide the truth about the CEG's
scam and how there is not a valid copyright infringement
claim.

262.    Plaintiff believes and alleges that any attorney with a
shed of integrity would not have filed any of the lawsuits
filed by Mr. Cable due to being unethical, fraudulent, and
fictitious. Plaintiff believes and alleges that Mr. Cable
intended to pass all the responsibility of the lawsuits
solely on his clients; however Federal law does not condone
such practices as knowingly filing false, malicious, and

frivolous lawsuits and Massachusetts law forbids it.

263.    Plaintiff is informed, believes, and alleges that Mr.
    Cable, acting as an attorney, willfully and knowingly filed
    a false and malicious lawsuit against the plaintiff on May
    26, 2012.

**264.**    Plaintiff is informed, believes, and alleges that Mr.
    Cable, acting as an attorney, willfully and knowingly filed
    a false and malicious lawsuit against the similarly
    stipulated victims on various other dates throughout the
    year of 2012.

### 2. Abuse of Process

265.    Plaintiff repeats, alleges, and incorporates facts and
    allegations in paragraphs 12 – 264 as fully set forth
    herein.

266.    Abuse of Process is defined as: the use of legal
    process by illegal, malicious, or perverted means. Examples
    include serving (officially giving) a complaint to someone
    when it has not actually been filed, just to intimidate an
    enemy, filing a false declaration of service (filing a
    paper untruthfully stating a lie that someone has
    officially given a notice to another person, filing a
    lawsuit which has no basis at law, but is intended to get
    information, force payment through fear of legal
    entanglement or gain an unfair or illegal advantage. Some

70

people think they are clever by abusing the process this

way. A few unscrupulous lawyers do so intentionally and can

be subject to discipline and punishment. Sometimes a lawyer

will abuse the process accidentally; an honest one will

promptly correct the error and apologize.[3]

267.    Plaintiff is informed and believes that Mr. Cable 1)

   filed a lawsuit which has no basis at law that was 2)

   intended to force payment through the fear of legal

   entanglement.

268.    Although the plaintiff was never served or named as a

   defendant, this court has already found that the Mr. Cable

   had no real intention of serving or naming anyone as

   defendants in their lawsuit scheme.

269.    Mr. Cable identified the plaintiff as a defendant in

   the complaint he filed complaint, saying: "The true names

   of Defendants are unknown to the Plaintiff at this time.

   **Each Defendant is known to Plaintiff only by the Internet**

   **Protocol ("IP") address assigned to that Defendant by his,**

   **her or its Internet Service Provider on the date and at the**

   **time at which the infringing activity of each Defendant was**

   **observed.**"(Emphasis added) Page 1, paragraph 7, of

   defendants' complaint. Comcast, after receiving the

   defendants' subpoena, informed the plaintiff that the

---

[3]    Dictionary.law.com

defendants identified him as Doe 64 in lawsuit 1:12-cv-10944. Mr. Cable certified this as fact under Rule 11 by filing it.

270.    On July 30, 2012, Judge Sorokin found that an IP address will not positively identify infringers, it only identifies subscribers. Judge Sorokin also found that telling subscribers that they have been sued when the defendants were, supposedly, seeking relief from infringers was inappropriate. Judge Sorokin quashed all subpoenas before him and gave Mr. Cable an opportunity to correct the matter since subscribers were more likely to be non-party witnesses than infirngers. At the time, Judge Sorokin's ruling affected three lawsuits. Mr. Cable, being aware of this ruling, made no such effort to correct this matter before Judge Saylor and instead continued to pursue settlements from subscribers in all other lawsuits.

271.    Plaintiff is informed and believes that Mr. Cable never sought to identify any infringers because no one infringed their copyrights. Plaintiff is informed and believes that this court already found as fact that Mr. Cable had no intention of identifying infringers.

272.    Plaintiff is informed and believes that Mr. Cable used false allegations of infringement to mask the fact that subscribers were the only intended targets.

273.    Plaintiff is informed and believes that Mr. Cable is
and was unable to show the court why under Rule 11 they
believed anyone they sought information from was an
infringer.

274.    On May 26, 2012, Mr. Cable filed a lawsuit on behalf of
NSI asserting false allegations against the plaintiff for
the purpose of deceiving the plaintiff into paying a
settlement of $3,500.

275.    Plaintiff is informed, believes, and alleges that Mr.
Cable's purpose for filing a lawsuit was solely to give
their threat of litigation "teeth".

276.    Plaintiff is informed, believes, and alleges that Mr.
Cable filed the lawsuit to deliberately create the illusion
that NSI had legal standing to pursue the subscribers for
copyright infringement.

277.    Plaintiff believes and alleges that Mr. Cable filed his
client's lawsuits with full knowledge that no one infringed
on their copyrights.

278.    Plaintiff is informed, believes, and alleges that Mr.
Cable filed the lawsuit to deliberately induce fear,
stress, emotional duress, and psychological duress in order
to procure "settlements" from his victims.

279.    Plaintiff is informed, believes, and alleges that Mr.
Cable improperly used the courts and the legal system in

general as a sort of weapon to abuse and harass the
plaintiff and similarly stipulated victims.

280.    Plaintiff is informed, believes, and alleges that Mr.
Cable had no intention of following through with any of his
40 lawsuits for reasons such as avoiding discovery because
he knew that their claims were false and without merit.

281.    Plaintiff is informed, believes, and alleges that Mr.
Cable had no intention of following through with any of his
40 lawsuits for reasons such as avoiding discovery to avoid
exposure for partaking in a "what is essentially an
extortion scheme".

282.    Plaintiff believes, and alleges that NSI did not want
to purse litigation in order to avoid discovery that would
reveal their consent, permission, or otherwise
participation in the distribution of the work they filed
lawsuits over.

283.    Plaintiff is only aware of 40 lawsuits Mr. Cable filed
as part of this scheme. 13 of them were dismissed by the
court for failing to comply with orders and failure to
prosecute and 26 were dismissed voluntarily.

284.    Plaintiff is informed and believes that, to date, Mr.
Cable has filed 40 nearly identical lawsuits in this court
and has not once ever named a defendant or having once
served an infringer. In each lawsuit, Mr. Cable only ever

sought to obtain settlements form subscribers. This is a
fact that cannot be challenged as it is a matter of court
record.

285.    Plaintiff believes that because Mr. Cable knew that NSI
allowed their work to be distributed for the purpose of
copying so that they could file lawsuits against those they
allowed to have access their work via torrents, plaintiff
believes that Mr. Cable also knew that this demonstrates
very clear bad faith since NSI lacked any standing to file
lawsuits in the first place.

286.    Plaintiff believes the Mr. Cable will assert that the
plaintiff was never a target of the defendants' scheme,
however this is directly opposed by the settlements Mr.
Cable has acquired from other similarly stipulated "non-
parties".

287.    In summary: Plaintiff is informed, believes, and
alleges: 1) that the plaintiff was identified as a
defendant by Mr. Cable or was an intended target of the
defendants' scheme; 2) that Mr. Cable initiated bad faith
litigation against the plaintiff; 3) that Mr. Cable's
intent was to intimidate the plaintiff into paying a
settlement; 4) that Mr. Cable never intended to pursue the
litigation it filed; 5) that Mr. Cable never intended to
pursue infringers; 6) that Mr. Cable had no intention of

naming anyone as a defendant.

288.    Plaintiff is informed and believes that the bare facts
alone are sufficient in establishing and proving abuse of
process by Mr. Cable.

### 3. Malicious Prosecution

289.    Plaintiff repeats, alleges, and incorporates facts and
allegations in paragraphs 12 – 288 as fully set forth
herein.

290.    Plaintiff is informed and believes that to maintain and
To win a suit for malicious prosecution, the plaintiff must
prove four elements: (1) that the original case was
terminated in favor of the plaintiff, (2) that the
defendant played an active role in the original case, (3)
that the defendant did not have probable cause or
reasonable grounds to support the original case, and (4)
that the defendant initiated or continued the initial case
with an improper purpose.

291.    Plaintiff is informed, believes, and alleges that based
on his IP address he was identified by the defendants as
Doe 64.

292.    Defendants' complaint claimed that "Each *Defendant* is
known to Plaintiff only by the *Internet Protocol ("IP")
address assigned* to *that Defendant*..." (Emphasis added).

Whereby the plaintiff, identified as Doe 64, was the
defendant regardless of subscriber/infringer status.
Defendants made no effort to change or other wise correct
this in most of their lawsuits. This fact is irrefutable
and a matter of known public record.

293.    Mr. Cable has pursued defaults against known
subscribers without being able to explain under Rule 11 why
they believed the subscriber was an infringer. This fact is
irrefutable and a matter of known public record.

294.    In Case 1:12-cv-10945, Brent. J Nelson filed a motion
to dismiss which contended that he was not liable, that Mr.
Cable demanded $3,500 to drop the lawsuit, that Mr. Cable
acknowledged that Mr. Nelson (the subscriber) could not
have infringed on his clients rights, and that Mr. Cable
refused to dismiss the allegations against him regardless
of the fact. These claims were never challenged by Mr.
Cable. This is irrefutable and a matter of known public
record.

295.    It is irrefutable as a matter of known public record
that the plaintiff was the defendants intended target, that
the plaintiff was identified as the defendant Doe 64 in the
underlying lawsuit, and that the defendants had no
intention of identifying true infringers or naming
defendants.

296.    On May 26, 2012, the defendants initiated litigation
       against the plaintiff, identifying him only by his IP
       address as Doe 64. Plaintiff clarifies that the IP address
       is his because he is the one only subscriber of shared
       internet in his household.

297.    Plaintiff appeared before the court on September 13 for
       a hearing on motions filed by the plaintiff, the defendants
       failed to appear. Plaintiff is informed and believes having
       to appear for a motion hearing satisfies the minimal
       requirement for qualifying the case as prosecution. Again,
       the plaintiff appeared before the court, the defendants
       refused to do so.

298.    Plaintiff is informed, believes, and alleges that
       because NSI's copyrights were not infringed by way of NSI
       distributing, allowing the distribution of, or otherwise
       allowing or enabling the transactions of copying and
       distributing of their works the defendants had no
       reasonable grounds to support their case.

299.    Plaintiff is informed, believes, and alleges that the
       lawsuit against the plaintiff was without probable cause
       due to NSI's personal knowledge that using the CEG's
       monetization service would enable or otherwise allow people
       to copy or distribute their work. NSI should have
       reasonably been aware of this since they chose to

"Establish a new revenue source" that involved secretly watching people copy their works via known uploaded torrents that were uploaded by the CEG.

300. Plaintiff is informed, believes, and alleges that each defendant played an active role in the underlying case. Mr. Cable played the role of "attorney", drafting all documents and oppositions to victims' motions, assuring the court the suits were filed in good faith, and extracting settlements from victims.

301. Plaintiff is informed and believes that the original case was dismissed in his favor. Judge Saylor's order: "the claims against all of the "Doe" defendants are severed and all claims, except those against "Doe #1," are hereby DISMISSED without prejudice." Since the claims against the plaintiff were dismissed by this court, the lawsuit was terminated in favor of the plaintiff.

302. Plaintiff is informed and believes that on December 12, 2012, Judge Saylor issued an order terminating the original case altogether. The case was terminated and this is irrefutable and a matter of public record.

303. Plaintiff was never held liable to the defendant, wherefore; the case was terminated in favor of the plaintiff.

304. Defendants are yet to file any action against the

plaintiff, or any other dismissed Doe for that matter, nearly a year after the plaintiff was dismissed. Plaintiff is informed and believes that the defendants have abandoned their claims against the plaintiff.

305. Plaintiff believes that the bare facts provided herein are sufficient in establishing and proving malicious prosecution by defendant Mr. Cable.

## 4. Libel/Defamation of Character

306. Plaintiff repeats, alleges, and incorporates facts and allegations in paragraphs 12 – 305 as fully set forth herein.

307. On May 26, 2012, NSI filed a lawsuit against the plaintiff that falsely alleged that the plaintiff violated NSI's copyrights.

308. Mr. Cable specifically identified the plaintiff by his IP address and claimed that the plaintiff was the appropriate defendant: "The true names of Defendants are unknown to the Plaintiff at this time. **Each Defendant** is known to Plaintiff only by the **Internet Protocol ("IP") address assigned to that Defendant** by his, her or its Internet Service Provider on the date and at the time at which the infringing activity of each Defendant was observed."(Emphasis added) Page 1, paragraph 7, of

defendants' complaint. Plaintiff is informed, believes and alleges that Mr. Cable filed his claim against the plaintiff or was specifically targeting the plaintiff.

309.    Mr. Cable claimed that the plaintiff violated NSI's copyrights by downloading a copy of their pornographic work via bittorrent without their consent. Plaintiff believes and alleges that Mr. Cable knew these same claims were false because NSI willfully knowingly used their purportedly copyrighted work to entrap victims for the purpose of filing false claims to scare their victims into paying settlements.

310.    Plaintiff is informed that Mr. Cable knew that NSI had personal knowledge of the transaction or copying and took no action to prevent said copying at the time of the copying, that NSI allowed the transaction to take place and, as a matter of law, had no legal right to sue or make allegations of rights violations or illegal activity against the plaintiff or similarly stipulated victims.

311.    Plaintiff is informed, believes, and alleges that Mr. Cable asserted such false and defamatory claims for the purpose of personally obtaining undue profits by way of defrauding, scaring, and humiliating its victims, such as the plaintiff.

312.    Plaintiff believes that Mr. Cable knew that the NSI

allowed, consented, or otherwise participated in the

distribution of their works for the purpose of publishing

false and defamatory claims against unnamed persons with

intent to extort money from them.

313.    Plaintiff believes Mr. Cable knew that NSI is

responsible for the distribution and copying they

complained of as they consented to, allowed, or were

reasonably aware of the CEG's practices.

314.    Plaintiff believes that NSI and Mr. Cable believe their

defamation to be worth $3,500 as this is the amount

demanded by the defendants in order to make the defamatory

claims disappear. By setting a value to their defamation,

plaintiff believes that the defendants have established the

minimum amount recoverable as damages for defamation.

## 5. **Fraudulent Misrepresentation**

315.    Plaintiff repeats, alleges, and incorporates facts and

allegations in paragraphs 12 – 314 as fully set forth

herein.

316.    Plaintiff is informed, believes, and alleges that Mr.

Cable willfully and knowingly misrepresented, to the court,

the transactions of Doe defendants as copyright

infringement.

317.    Plaintiff is believes, and alleges that Mr. Cable knew

that NSI's copyrights were not infringed but chose to
misrepresent the torrent activity as infringement for
personal gains.

318.    Plaintiff believes that Mr. Cable's misrepresentations
to the court has cause real damages and believes there is
good cause under Rule 11 to extend fraudulent
misrepresentation to his representations to the court that
have affected the plaintiff.

## 6. Attempted Extortion

319.    Plaintiff repeats, alleges, and incorporates facts and
allegations in paragraphs 12 - 318 as fully set forth
herein.

320.    Plaintiff is informed, believes, and alleges that Mr.
Cable conspired to and followed through with, knowingly
filing a frivolous lawsuit, with no intention of pursuing
litigation, for the purpose of extracting unjust and undue
settlements from the plaintiff and similarly stipulated
victims.

321.    Plaintiff believes and alleges that Mr. Cable took the
initial steps of their extortion scheme by creating and
filing a frivolous lawsuit and deceptively requesting
discovery, but were blocked by plaintiff's actions of
filing a motion to quash/dismiss and by filing a counter

claim.

322.    Plaintiff is informed, believes, and alleges that Mr.
  Cable has profited from extorting money from Doe defendants
  and intended to and attempted to do the same to the
  plaintiff.

323.    Plaintiff is informed, believes, and alleges that Mr.
  Cable used the embarrassing nature of pornography and his
  victims' potential sexual interests to humiliate its
  victims into settlements by using the threat of public
  exposure and scrutiny via a public lawsuit. Plaintiff is
  informed, believes and alleges that Mr. Cable used the
  threat of a potentially costly lawsuit to scare the
  plaintiff and its other victims into paying "settlements"

324.    Plaintiff is informed, believes, and alleges that Mr.
  cable willfully and knowingly acted in ways or partook in
  actions that were intended to cause emotional duress and
  humiliation, with reckless disregard to the plaintiff and
  their other victims, for the purpose of coercing them to
  pay money to avoid public exposure.

325.    Plaintiff believes that by representing himself in the
  underlying matter, he removed Mr. Cable's leverage over him
  and diminishing any interest Mr. Cable had in pursuing or
  harassing the plaintiff.

326.    Plaintiff believes and alleges that by representing

himself under his true name and engaging the defendants in
litigation, the defendants lost any leverage they had over
the plaintiff and any interest in pursuing the plaintiff as
the plaintiff clearly showed them a willingness to take the
fight to them during the course of the original case.

## 7. Racketeering

327.   Plaintiff repeats, alleges, and incorporates facts and
    allegations in paragraphs 12 – 326 as fully set forth
    herein.

328.   Plaintiff is informed, believes, and alleges that
    Marvin Cable conspired to and followed through with,
    knowingly filing a frivolous lawsuit, with no intention of
    pursuing litigation, for the purpose of extracting unjust
    and undue settlements from the plaintiff and similarly
    stipulated victims.

329.   Plaintiff believes and alleges that Marvin Cable took
    the initial steps of their extortion scheme by creating and
    filing a frivolous lawsuit and deceptively requesting
    discovery, but was blocked by plaintiff's actions of filing
    a motion to quash/dismiss and by filing a counter claim.

330.   Plaintiff is informed, believes, and alleges that
    Marvin Cable has profited from extorting money from Doe
    defendants and intended to and attempted to do the same to

the plaintiff.

331.    Plaintiff is informed, believes, and alleges that Mr.
Cable used both the embarrassing nature of pornographic
material coupled with the threat from a fraudulent lawsuit
to scare and embarrass the plaintiff and similarly
stipulated victims to extort "settlements" from them.
Plaintiff is informed and believes that under current
racketeering laws the filing of fraudulent and malicious
lawsuits in order to scare people into paying "settlements"
is an act of racketeering.

332.    Plaintiff is informed and believes that racketeering is
illegal under 18 USC § 1961 et. Seq.

333.    Plaintiff is informed, believes, and alleges that Mr.
Cable willfully and knowingly filed a fraudulent lawsuit
with malicious intent to scare the plaintiff and similarly
stipulated victims into paying him money to avoid being
sued.

334.    Plaintiff has recently been made aware of the fact that
his litigation expenses are not able to be considered
damages under RICO because, and only because, litigation
was not the intention of the action filed by the
defendants. However because the defendants' intentional
infliction of harm against the plaintiff, plaintiff
believes he may be entitled to injunctive relief.

335.    Plaintiff believes and alleges that the settlements
    victims agreed to contain a clause in which they agree that
    they are liable to the defendants. Plaintiff believes this
    is done purposefully to make it more difficult for paying
    victims to bring RICO charges or allegations once they
    realize what actually happened. Plaintiff requests that the
    court allow the RICO allegations to proceed on behalf of
    the other Does. Plaintiff has already set forth allegations
    sufficient for RICO and has requested a form of relief that
    would satisfy the need for hundreds of Does to file
    separate RICO claims against the defendants.

## 8. Intentional Infliction of Harm

336.    Plaintiff repeats, alleges, and incorporates facts and
    allegations in paragraphs 12 - 336 as fully set forth
    herein.

337.    Plaintiff is informed, believes, and alleges that Mr.
    Cable filed lawsuits against does for the purpose of
    causing undue stress, emotional harm, and psychological
    harm to place Does under duress so they could more easily
    extort settlements from the defendants.

338.    Plaintiff is informed, believes, and alleges that Mr.
    Cable specifically used the embarrassing nature of NSI's
    works to cause emotional stress, feelings of embarrassment,

87

and undue stress to place Does under duress so they could
more easily extort settlements.

339.    Plaintiff is informed, believes, and alleges that Mr.
Cable intentionally inflicted emotional and psychological
harm on all Does, including the plaintiff, with reckless
disregard to any conditions anyone was suffering, in order
to more easily pressure them into paying settlements.

340.    Plaintiff suffered emotional and psychological pains as
well as undue stress and anxiety as a result of the
defendants' intentional infliction of harm upon him.

### 9. Violation of A.M.G.L. 93A: Unfair Practices

341.    Plaintiff repeats, alleges, and incorporates facts and
allegations in paragraphs 12 – 340 as fully set forth
herein.

342.    Plaintiff is informed, believes, and alleges that
A.M.G.L. Chapter 93A protects him from unfair and deceptive
business practices.

343.    Plaintiff believes and alleges that at all relevant
times defendants engaged in unfair and deceptive conduct
within the meaning of Chapter 93A. Defendants filed and
manufactured their lawsuit knowing that NSI's copyrights
were not infringed; that they were targeting subscribers
and not infringers; that they did not intend to actually

litigate their cases.

344.    Plaintiff is informed, believes, and alleges that the
   defendants filed their suit as part of the overall
   copyright scheme, with the ulterior motive of forcing
   "settlements" from plaintiff and other Does. The defendants
   then used their complaint as leverage against the
   plaintiff's and other does' ignorance as to their potential
   defenses.

345.    Plaintiff is informed, believes, and alleges that this
   particular copyright scheme is the CEG's brainchild.

346.    Plaintiff is informed, believes, and alleges that using
   copyrights to "Establish a new revenue source" by way
   filing phony lawsuits is an unfair and deceptive practice.

347.    Plaintiff is informed, believes, and alleges that the
   CEG used NSI's copyrights to engage in a business practice
   that involves allowing the distribution of their work for
   the purpose of generating revenue by way of a copyright
   infringement lawsuit scam that is directed at extorting
   settlements from unsuspecting subscribers under the guise
   of legitimate legal actions.

348.    Plaintiff is informed, believes, and alleges The
   Defendants' unfair, unlawful, and deceptive practices
   occurred in the course of the Defendants' Copyright Scheme
   and the challenged practices directly caused actual damages

and injury to plaintiff and other Does.

349.    Plaintiff is informed, believes, and alleges that the
    CEG's monetization service is nothing more than a lawsuit
    factory in which the CEG manufactures lawsuits for its
    clients to file, using the CEG's attorneys, so that each
    party may profit from the manufactures lawsuit.

350.    Plaintiff is informed, believes, and alleges that Mr.
    Cable is a CEG partnered attorney.

351.    Plaintiff is informed, believes, and alleges that each
    lawsuit is premeditated and schemed before any "tracking"
    has started and that all three involved parties are aware
    that they are allowing people to copy and distribute the
    works of the "client" for the purpose of manufacturing
    settlement driven lawsuits.

352.    Plaintiff is informed, believes, and alleges that each
    lawsuit that was filed is part of the overall copyright
    scheme. Plaintiff is also informed, believes, and alleges
    that the copyright scheme is a business practice and not a
    lawful petition for relief.

353.    Plaintiff believes and alleges that he is entitled to
    treble damages resulting form the defendants unfair and
    deceptive practices.

## 10. Copyright Trolling

354. Plaintiff repeats, alleges, and incorporates facts and
    allegations in paragraphs 12 - 353 as fully set forth
    herein.

355. As an attorney, Marvin Cable has a specific
    responsibility to defend the legal rights of his clients.
    However, when his "clients" ask him to engage in unlawful
    behavior against others, he has a specific responsibility
    to the potential victims and his profession to refuse to
    work or perform such actions for his client. Plaintiff is
    informed, believes, and alleges that Mr. Cable disregarded
    his professional responsibilities and participated in the
    copyright trolling scam, perpetuated by the CEG, for his
    own personal gains against the plaintiff and similarly
    stipulated victims.

356. Plaintiff is informed, believes, and alleges that Mr.
    Cable originally and knowingly filed the fictitious
    copyright infringement claims at the behest of his co-
    conspirators against the plaintiff and similarly stipulated
    victims.

357. Plaintiff is informed, believes, and alleges that Mr.
    Cable never brought any case to trial.

358. Plaintiff is informed, believes, and alleges that Mr.

Cable never sought to identify infirngers.

359.   Plaintiff is informed, believes, and alleges that Mr.
   Cable never sought to name any Doe defendants.

360.   Plaintiff is informed, believes, and alleges that Mr.
   Cable only sought "settlements" from anonymous subscribers.

361.   Plaintiff is informed, believes, and alleges that Mr.
   Cable ensured that lawsuits never reached the point at
   which copyright misuse, an affirmative defense, could be
   used.

362.   Plaintiff believes, under Rule 11, that the allegation
   of Copyright Trolling is warranted by a non-frivolous
   argument for the creation of new doctrine. Currently, the
   only countermeasures to false copyright infringement claims
   are the copyright misuse doctrine and title 17, section
   512(f) (DMCA misrepresentations). However the original
   lawsuit does not arise out of the DMCA the plaintiff is
   unable to assert misrepresentation allegations nor did the
   original lawsuit never reached and was never intended to
   reach the point of litigation at which the affirmative
   defense of copyright misuse may be raised.

363.   As of current copyright law is without any
   countermeasures that can address copyright
   settlement/litigation factories. This is because lawsuits
   never reach a point of litigation to which copyright misuse

can be raised as an affirmative defense, particularly since
the parties bringing the suit never intend to actually
follow through with the suit or name anyone; conveniently
it is this that also enables parties like the defendants to
circumvent copyright misuse claims. Also, there currently
is no countermeasure to the abuse or misuse of statutory
damages, which are a big factor into what scares people
into paying settlements.

364.   A copyright trolling doctrine will create a
countermeasure that specifically combats these illegitimate
settlement/lawsuit factories first by making it no longer
worth while to make empty threats using the statutory
damages to provide a fear factor and next by assuring that
copyright infringement lawsuit filed will be pursued.

## VIII. Damages Caused

365.   Plaintiff is on disability for Post Traumatic Stress
Disorder (PTSD) that was not caused by this incident or any
incidents similar to the one being complained of.

366.   Plaintiff is not normally prone to unprovoked anxiety
attacks, unprovoked long bouts of depression, unprovoked
loss of appetite, unprovoked suicidal thoughts or feelings,
unprovoked self destructive thoughts or feelings,
unprovoked and extreme feelings of worthlessness, or

periods of unprovoked and excessive stress or anxiety.

367.    As a direct result of all three defendants' actions,
   plaintiff has suffered: anxiety attacks, loss of sleep,
   nightmares, abnormal depression, periods of excessive
   stress, and periods of excessive anxiety.

368.    As a direct result of all three defendants' actions,
   plaintiff has experienced: extreme feelings of
   worthlessness, severe humiliation and embarrassment,
   feelings and thoughts of suicide, self destructive thoughts
   and emotions, and fear of a $150,000 judgment plaintiff was
   threatened with.

369.    Plaintiff believes he is entitled to punitive damages
   because the Defendants' conduct was malicious, willful,
   wanton, intentional, and outrageous, evidencing evil
   motive, reckless indifference to or reckless disregard for
   the rights and conditions of others.

370.    As a direct result of all three defendants' actions,
   plaintiff has suffered great and ruinous damages to his
   current relationship which continue to persist to this day.

371.    All three defendants interfered with necessary and
   healthy mourning of a family member who passed away on July
   3rd, 2012.

372.    To defend himself in court, plaintiff feels that he was
   forced to expose himself to irreparable public humiliation

as well as humiliating himself before the courts. Plaintiff
is unaware of how far reaching an impact defendants' public
humiliation scheme since it is a matter of public record
and could greatly impact him at anytime in the near or
distant future.

373.   Plaintiff's claimed damages are a direct result of all
three defendants' frivolous and malicious actions.
Defendants have acted in such described manners against
plaintiff and others with the intention of causing such
harms to coerce settlements and extort money. Defendants
maliciously participated in frivolous litigation against
the plaintiff with reckless disregard to plaintiff's
condition.

374.   Because of defendant's intentional infliction of harm
plaintiff has suffered mental pain and anguish for
humiliation, indignation, wounded pride, despair, anxiety,
stress, depression, and fright. Plaintiff believes he is
entitled to recover punitive damages as a result thereof.

375.   Plaintiff understands that stress is a normal
experience during litigation. However when a party, such as
all three defendants, files or partakes in litigation of a
lawsuit that is intended to inflict stress and anxiety on
defendants, for the purpose of intimidating said
defendants, coercing settlements, and to otherwise harass

defendants, the stress, anxiety, and destructive emotions
defendants experience become a direct product of the
party's malicious intentions and unlawful actions.

## IX. Relief Sought

376.   Plaintiff prays for the court to place permanent
injunctions against the Copyright Enforcement Group and its
employees forbidding them from offering "monetization" or
similar services to any future clients.

377.   Plaintiff prays for the court to place permanent
injunctions against the Copyright Enforcement Group and its
employees forbidding them from monitoring torrents for
activity.

378.   Plaintiff prays for the court to place permanent
injunctions against the Copyright Enforcement Group and its
employees forbidding them from offering legal testimony in
copyright infringement lawsuits.

379.   Plaintiff prays for the court to order the Copyright
Enforcement Group to withdraw all evidence and declarations
from all lawsuits it is presently aiding and to deem all
evidence and declarations provided by the CEG as
inadmissible.

380.   Plaintiff prays for the court to order the CEG and
Marvin Cable to cease any and all copyright related

activities.

381.    Plaintiff prays for the court to award to the plaintiff
   $150,000 per infringement accusation in punitive damages
   against the Copyright Enforcement Group for aiding and
   inducing copyright trolling. ($300,000 total)

382.    Plaintiff prays for the court to place permanent
   injuctions against Attorney Marvin Cable forbidding him
   from practicing copyright law in any way, shape, or form.
   Alternatively plaintiff prays for the court to revoke
   Marvin Cable's licenses to practice law for his
   participation in what is essentially organized crime.

383.    Plaintiff prays for the court to award to the plaintiff
   $150,00 per infringement accusation in punitive damages
   against Attorney Marvin Cable for copyright trolling and
   aiding copyright trolling. ($300,000 total)

384.    Plaintiff prays for the court to hold NSI accountable
   for copyright misuse and place upon them the penalty of
   copyright misuse: unenforceability of the copyright in
   court until the misuse has been purged and its effects no
   longer exist.

385.    Plaintiff prays for the court to award to the plaintiff
   $150,000 per infringement accusation in punitive damages
   against New Sensations for copyright trolling. ($300,000
   total)

386.    Plaintiff prays for the court to order all three
   defendants to repay to each doe they coerced settlements
   from three times the amount settled for with relation to
   file 022aab5cffdc7d012751cbb0f0c62f2dbec29a83 as sanctions
   for RICO violations.

387.    Plaintiff prays for the court to order all three
   defendants to disclose to the court their "cut" of all
   other settlements obtained through this scheme, across all
   lawsuits, and to repay to the respective Does three times
   their portion of the profits unduly obtained by the
   defendants, in all lawsuits, in this matter.

388.    Plaintiff prays for the court to award the plaintiff
   with up to $1,000,000 from each defendant for having
   intentionally inflicted emotional damages.

389.    Plaintiff prays for the court to award the plaintiff
   with treble costs of litigation case 1:12-cv-10944 from all
   defendants (roughly $1,000 in costs) for 93A violations.

390.    Plaintiff prays for the court to award any and all
   costs incurred by litigating this case.

391.    Plaintiff prays for the court to award the plaintiff
   with up to $1,000,000 from each defendant for
   inducement/barratry and for willful abuse of process and
   malicious prosecution.

392.    Plaintiff prays for the court to award the plaintiff at

least $3,500 from Mr. Cable and NSI for defamation.

393.    Plaintiff prays for the court to award plaintiff with
    any other punitive or exemplary damages the court deems
    appropriate.

The Plaintiff,

James Dore

8/14/2013

FILED
**U.S. District Court: District of Massachusetts**

2013 AUG 20  P 12:42 **James Dore**

U.S. DISTRICT COURT       **v.**
**New Sensations Inc. et al**
**1:13-cv-10315**

## Notice of Filing Amended Complaint

Pursuant to Rule 15(b) plaintiff has filed his first
Amended complaint. Plaintiff asks the court to deny all prior
motions to dismiss as moot.

James Dore

8/20/2013